# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

Nos. 07-2267/2393

_____

Margaret Sherman; Richard Sherman,

    Appellants/Cross-Appellees,

v.

Winco Fireworks, Inc.; Winco Fireworks International, LLC.,

    Appellees/Cross-Appellants.

\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*
\*

Appeal from the United States District Court for the District of Nebraska.

[PUBLISHED]

_____

Submitted: March 13, 2008
Filed: July 3, 2008

_____

Before WOLLMAN, HANSEN, and MELLOY, Circuit Judges.

_____

HANSEN, Circuit Judge.

Margaret and Richard Sherman appeal the district court's grant of Winco Fireworks, Inc.'s motion to amend its answer, which allowed Winco to plead an affirmative federal-law preemption defense more than seventeen months after the deadline for amending pleadings. The Shermans also challenge the district court's exclusion of expert testimony and the district court's failure to give several jury instructions. On cross-appeal, Winco challenges the district court's attorney's fees

award. We reverse the district court order granting Winco leave to amend and remand for a new trial on the Shermans' failure-to-warn claim in addition to Mr. Sherman's pendent consortium claim. We do not reach the district court's exclusion of expert testimony, and we affirm on the jury-instruction issues. Finally, we reverse, in part, the district court's attorney's fees award.

I.

On July 3, 2002, the Shermans were watching their grandson Nate Kapustka set off fireworks in Mrs. Sherman's daughter's back yard. Nate ignited a "Saturn Missile" that errantly struck and injured Mrs. Sherman's eye. Nate's father, Stanley Kapustka, had purchased the Saturn Missile from Hale Fireworks, Inc., in Nixa, Missouri, prior to the accident. Winco is allegedly the fireworks distributor that sold the Saturn Missile to Hale Fireworks.

On July 2, 2004, the Shermans filed this suit in the District of Nebraska, asserting nine causes of action against several businesses in the fireworks industry allegedly responsible for the manufacture, distribution, and/or sale of the Saturn Missile. The Shermans' nine claims included a Nebraska-law negligent-failure-to-warn claim, among others. In its initial scheduling order, the district court directed the parties to file motions to amend their pleadings by May 6, 2005. A later progression order directed the parties to file motions to amend their pleadings by August 9, 2005. The district court directed the parties to complete discovery and to file motions for summary judgment by December 15, 2006.

On December 15, 2006, Winco filed a motion for summary judgment and argued, for the first time, that the Shermans' negligence and warranty claims–counts two through seven–were label-based claims preempted by the Federal Hazardous Substances Act (FHSA) and FHSA regulations. See 15 U.S.C. § 1261(p)(1) (defining "misbranded hazardous substance"); 16 C.F.R. § 1500.14(b)(7)(xiv) (describing the

label required for "[m]issile-type rockets," pursuant to the Consumer Product Safety Commission's authority under 15 U.S.C. § 1262(b) to establish label requirements additional to those mandated by 15 U.S.C. § 1261(p)(1)). On January 22, 2007, more than seventeen months after the August 9, 2005, deadline for amending pleadings, Winco filed a motion for leave to file and serve an amended answer formally pleading this affirmative preemption defense. The district court granted Winco's motion for leave to amend its answer, noting that allowing the amendment was "somewhat prejudicial" and that Winco's delay was "unwarranted." (Shermans' Add. at 10.)[1] In an attempt to mitigate the prejudice resulting from the belated amendment, the district court permitted the Shermans to file a supplementary brief on the preemption issue; allowed the Shermans to seek leave to conduct additional discovery; permitted the Shermans to seek relevant time extensions; and invited the Shermans to file a motion for attorney's fees and costs incurred as a result of the belated amendment. The district court subsequently awarded the Shermans $32,019.87 in attorney's fees, costs, and other expenses based on 28 U.S.C. § 1927, which permits the award of fees if an attorney "multiplies the proceedings in any case unreasonably and vexatiously."

In a February 2007 order, the district court addressed Winco's summary-judgment motion and considered Winco's affirmative preemption defense, concluding that only the Shermans' third cause of action for negligent failure to warn was preempted insofar as the Shermans sought to hold Winco to a higher standard of care than the standard established by federal law. See Mattis v. Carlon Elec. Prods., 295 F.3d 856, 862 (8th Cir. 2002) (quoting 15 U.S.C. § 1261 note (b)(1)(a) ("[N]o State . . . may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such cautionary labeling requirement is identical to the labeling requirement under [§ 1261(p) or § 1262(b)].")). Specifically, the district court

---

[1] For ease of reference, in the remainder of this opinion the Shermans' addendum will be cited as "SA," and Winco's addendum will be cited at "WA."

concluded that the Saturn Missile's warning label satisfied the requirements of 16 C.F.R. 1500.14(b)(7)(xiv) as a matter of law, but found that genuine issues of material fact remained with respect to whether the firework's warning label complied with the requirements of 15 U.S.C. § 1261(p)(1)(E) (requiring hazardous substances to bear a label including, among other things, "an affirmative statement of the [product's] principal hazard or hazards"). The district court expressly rejected Winco's contention that the preemption defense affected the Shermans' remaining claims, but the district court did dismiss all but four of the nine original causes of action on grounds not challenged on appeal. The following four causes of action remained for trial: (1) negligent failure to use reasonable care to see that goods are safe for intended use; (2) negligent failure to warn (as limited by the district court's preemption ruling); (3) breach of implied warranty of merchantability; and (4) loss of consortium.

Prior to trial, Winco filed a motion in limine to exclude the testimony of the Shermans' expert, Dr. Christine Wood. The district court granted Winco's motion, concluding that Dr. Wood's testimony concerning the development of warning labels would not assist the jury because, as a result of its preemption ruling, "the warnings the Product's label was required to include ha[d] already been developed and stated in the federal regulations." (SA at 18.)

At trial, a jury found for Winco on all four claims, and the district court entered judgment in favor of Winco. The Shermans filed a renewed motion for judgment as a matter of law, or in the alternative, a new trial, which the district court denied. This appeal, and Winco's conditional cross-appeal of the attorney's fees award, followed.

## II.

First, we consider the Shermans' argument that the district court erred by applying the wrong standard in ruling on Winco's motion to amend its answer, which was filed well after the Rule 16 scheduling deadline for amending the pleadings.

While we review the district court's decision allowing a party to amend a pleading for an abuse of discretion, see Popoalii v. Corr. Med. Servs., 512 F.3d 488, 497 (8th Cir. 2008) (standard of review), we review whether the district court applied the correct legal standard in exercising that discretion *de novo*, see Ind. Lumbermens Mut. Ins. Co. v. Timberland Pallet & Lumber Co., 195 F.3d 368, 374 (8th Cir. 1999) ("Interpreting the Federal Rules of Civil Procedure . . . presents a question of law subject to *de novo* review." (internal marks omitted)).

Winco's belated motion to amend its answer and plead its affirmative preemption defense implicated three different federal rules of civil procedure. First, because preemption is an affirmative defense, see Wuebker v. Wilbur-Ellis Co., 418 F.3d 883, 886 (8th Cir. 2005), Rule 8(c) required Winco to plead the preemption defense in its answer. "Generally, failure to plead an affirmative defense results in a waiver of that defense." First Union Nat'l Bank v. Pictet Overseas Trust Corp., 477 F.3d 616, 622 (8th Cir. 2007). However, "when an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, technical failure to comply with Rule 8(c) is not fatal." Id. (internal marks omitted). Here, consistent with governing caselaw, the district court recognized that Rule 8© is not an absolute bar to a party's belated attempt to plead an affirmative defense, concluding that Winco had not waived its affirmative preemption defense in this particular case. Because the Shermans do not meaningfully contest this discretionary determination,[2] we do not address the district court's Rule 8(c) analysis further.

In addition to Rule 8(c), Winco's motion implicated both Rule 15(a) and Rule 16(b). Rule 15(a) governs the pretrial amendment of pleadings and states that where

---

[2] In their brief, the Shermans argue that the district court erred by concluding as a matter of law that an affirmative preemption defense can never be waived. But the district court's order is not so categorical. Rather, the order's plain language indicates that the district court concluded, in its discretion, that waiver of the preemption defense was not warranted in this particular case.

an amendment is not sought "as a matter of course"–as defined by the Rule–"a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). The Rule provides that "[t]he court should freely give leave when justice so requires." Id. But parties do not have an absolute right to amend their pleadings, even under this liberal standard. United States ex rel. Lee v. Fairview Health Sys., 413 F.3d 748, 749 (8th Cir. 2005). A district court appropriately denies the movant leave to amend if "there are compelling reasons such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." Moses.com Sec., Inc. v. Comprehensive Software Sys., Inc., 406 F.3d 1052, 1065 (8th Cir. 2005) (internal marks omitted).

Rule 16(b), on the other hand, guides the district court's issuance and modification of pretrial scheduling orders and provides that "[e]xcept in categories of actions exempted by local rule, the district judge . . . must issue a scheduling order," which "must limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(1), (3)(A). This schedule "may be modified *only for good cause* and with the judge's consent." Fed. R. Civ. P. 16(b)(4) (emphasis added). In addition, Rule 16(d) states that a pretrial order "controls the course of the action unless the court modifies it."

Relying on the plain language of Rule 16, the Shermans argue that the district court erred by failing to apply Rule 16(b)'s "good cause" standard in ruling on Winco's motion to amend. But as a threshold matter, Winco contends that the Shermans waived this argument by failing to raise it before the district court. Winco's position is unsupported by the record. In the Shermans' brief in opposition to Winco's motion to amend its answer–albeit in a lengthy footnote–the Shermans directed the district court to a district court case applying the same approach now advocated by the Shermans–the primacy of Rule 16(b) over Rule 15(a) in cases in which the deadline to amend pleadings has past. See Fin. Holding Corp. v. Garnac Grain Co., 127 F.R.D.

-6-

165, 165-66 (W.D. Mo. 1989). We conclude that this footnote raised the issue in the district court in a way sufficient to avoid waiver on appeal.

The interplay between Rule 15(a) and Rule 16(b) is settled in this circuit. In Popoalii, we stated that "[i]f a party files for leave to amend outside of the court's scheduling order, the party *must* show cause to modify the schedule." 512 F.3d at 497 (citing Rule 16(b) (emphasis added)). Moreover, we said so in the context of a discussion of the Rule 15 amendment standard, unmistakably concluding that Rule 16(b)'s good-cause standard governs when a party seeks leave to amend a pleading outside of the time period established by a scheduling order, not the more liberal standard of Rule 15(a). Id. Because Popoalii filed her motion to amend her complaint five months after the scheduling deadline for amending pleadings, "[u]nder [Rule] 16(b), Popoalii needed to show cause in order to be given leave to amend." Id.

The approach taken in Popoalii is derived directly from the plain language of Rule 16(b), which states both that district courts must issue a scheduling order limiting the time to amend the pleadings, and that a scheduling order "may be modified only for good cause." When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional. To permit district courts to consider motions to amend pleadings under Rule 15(a) without regard to Rule 16(b) "would render scheduling orders meaningless and effectively . . . read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." Sosa v. Airprint Sys., Inc., 133 F.3d 1417, 1419 (11th Cir. 1998)); see also Leary v. Daeschner, 349 F.3d 888, 909 (6th Cir. 2003) ("Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)."); Hawthorne Land Co. v. Occidental Chem. Corp., 431 F.3d 221, 227 (5th Cir. 2005), cert. denied, 127 S. Ct. 48 (2006) (applying the same approach); O'Connell v. Hyatt Hotels of P.R., 357 F.3d 152, 154-55 (1st Cir. 2004) (same); Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000)

(same); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992) (same).

Because Winco's motion to amend was filed more than seventeen months after the established scheduling deadline for amending pleadings, the district court was required to apply Rule 16(b)'s good-cause standard in ruling on Winco's motion. Winco argues that even if the district court was required to apply Rule 16(b), the district court's analysis was tantamount to a good-cause finding. Were we satisfied that the substance of the district court's ruling was in fact a good-cause analysis, giving due consideration to Winco's diligence in attempting to comply with the scheduling deadline, we would not disapprove of a functional reading of the district court's order; a formal citation of Rule 16(b)'s "good cause" requirement is not what counts. But as we explain below, we are not satisfied that the district court effectively engaged in a good-cause analysis as required by Rule 16(b).

The good-cause inquiry required under Rule 16(b) is more narrow than the analysis undertaken by the district court. "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." Rahn v. Hawkins, 464 F.3d 813, 822 (8th Cir. 2006); see also Fed. R. Civ. P. 16(b), advisory committee note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). While the prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, we will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. See Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001) (concluding that there was "no need to explore beyond the first criterion, [diligence,] because the record clearly demonstrate[d] that Bradford made only minimal efforts to satisfy the [scheduling order's] requirements"). Our cases reviewing Rule 16(b) rulings focus in the first instance (and usually solely) on the diligence of the party who sought modification of the order. See, e.g, Rahn, 464 F.3d at 822 (affirming the

district court's denial of Rahn's request for a modification of the scheduling order because the record made clear that Rahn did not act diligently to meet the order's deadlines); Barstad v. Murray County, 420 F.3d 880, 883 (8th Cir. 2005) (affirming the district court's denial of leave to amend the Barstads' complaint under Rule 16(b) because the Barstads had eight months to request an amendment of the scheduling order and "knew of the claims they sought to add when they filed the original complaint"); Freeman v. Busch, 349 F.3d 582, 589 (8th Cir. 2003) (affirming, under Rule 16(b), the district court's denial of Freeman's motion to amend her complaint because she provided no reasons why the amendment could not have been made earlier or why her motion to amend was filed so late).

The district court's order ruling on Winco's motion to amend cannot be read consistently with Rule 16(b)'s good-cause standard as this court has interpreted and applied that standard. The district court characterized Winco's delay in seeking to add the preemption defense as "unwarranted." (SA at 10.) The district court also found that Winco "admitt[ed] awareness of the . . . affirmative defense at least as early as May 16, 2006," (id.), but Winco still waited until January of 2007 to seek leave to plead the affirmative defense. The district court's order makes clear that in its analysis, Winco was anything but diligent in complying with the scheduling deadline. Winco's argument that the district court effectively applied and found good cause for the modification of the scheduling order is also at odds with the district court's attorney's fees award. The award of attorney's fees was based on 28 U.S.C. § 1927, which–in the words of the district court–"provides for . . . attorney's fees against an attorney who so multiplies the proceedings in any case unreasonably and vexatiously." (WA at 74.) Thus, the very basis for the district court's fee award was Winco's lack of diligence in seeking to amend its answer. For these reasons, we conclude that the district court did not implicitly apply Rule 16(b)'s good cause standard when ruling on Winco's motion to amend, and erred by failing to do so.

Moreover, the record provides no support for a finding of good cause here. Even though preemption is a purely legal defense based on readily available federal law, Winco waited to seek leave to plead the affirmative defense until two and a half years after the suit was filed; a month after the close of discovery; a month after it raised the defense in its summary judgment motion; almost eighteen months after the deadline for amending pleadings; and eight full months after it was actually aware of the preemption defense's applicability. Winco's explanation for its "inadvertent failure to plead pre-emption as an affirmative defense" was that "at the close of discovery and during research and preparation for [Winco's] summary judgment motion . . . [Winco] determined the merits of the pre-emption argument." (Appellants' App. at 609.) But this is effectively a concession that Winco did not explore the applicability of the preemption defense before the summary judgment stage of the litigation. Had Winco been diligent, it would have performed this research at the outset of the litigation, and at least prior to the scheduled deadline for adding affirmative defenses. The very fact that our court treats preemption as an affirmative defense presupposes that, in a typical case, a diligent defendant will be able to plead the defense on the basis of the complaint alone, at the onset of the litigation. Here, no change in the law, no newly discovered facts, or any other changed circumstance made the preemption defense more viable after the scheduling deadline for amending pleadings. Given the absence of good cause, we must conclude that the district court abused its discretion in allowing Winco to amend its answer so long after the scheduling deadline.

Despite the district court's error, reversal is not mandated unless the error "affect[s] a substantial right of the objecting party." Crane v. Crest Tankers, Inc., 47 F.3d 292, 296 (8th Cir.1995). Here, the district court's error was not harmless. In its summary judgment order, the district court concluded that the Shermans' negligent-failure-to-warn claim was preempted insofar as that claim sought "to impose warning requirements that [were] *different from or in addition to* federal standards." (Appellants' App. 1705.) As a result of the improperly allowed preemption defense, the Shermans were precluded from demonstrating that under Nebraska law the Saturn

Missile's "cautionary warning label should have included more than that which is required by the federal standards." (Id. at 1706.)  Consistent with this limitation that it placed on the Shermans' state-law failure-to-warn claim, and relying on its preemption discussion, the district court excluded the proffered expert testimony of Dr. Wood.  The district court reasoned that because "Dr. Wood [could not] testify to a standard of care that requires more than the federal regulations," her "testimony concerning the development of warning labels [was] irrelevant to this case."  (SA at 18.)  The exclusion of Dr. Wood's expert testimony followed directly from the district court's preemption analysis.

At oral argument, Winco suggested that the district court's allowance of the preemption defense made no real difference in the case, contending that the Shermans' evidence would have been the same with or without the amendment.  Winco asserts that, in fact, the allowance of the amendment lightened the Shermans' burden of proof because they were not required to prove the applicable Nebraska standard of care at trial.  We respectfully disagree.  Winco's argument assumes that the standard of care in Nebraska is the same as the standard of care set out in the FHSA.  But the standards are not necessarily the same in all cases.  In fact, Winco recognized as much when it argued for the applicability of the preemption defense for the first time.  (Appellants' App. at 228.)  ("To hold that . . . Winco [is] liable for not having provided additional label language . . . would be contrary to the express purpose of Congress to develop uniform safety standards." (internal marks omitted)).  The FHSA standard of care that was submitted to the jury required the Saturn Missile's label to conspicuously state:

> (A) The name and place of the manufacturer, packer, distributor or seller; (B) The signal word "WARNING" or "CAUTION" on all other hazardous substances; (C) An affirmative statement of the principal hazard(s), such as "Flammable," "Combustible," "Vapor Harmful," "Causes Burns," "Absorbed Through Skin," or similar wording descriptive of the hazard(s); (D) Precautionary measures describing the action to be followed or avoided; (E) Instruction, when necessary or

-11-

appropriate, for first aid treatment; and (F) Adequate directions for the protection of children from the hazard(s) . . . .

(SA at 35.) In contrast, had the Shermans been permitted to proceed on the basis of an unrestricted Nebraska common-law negligent-failure-to-warn claim, they would have been required to establish the relevant standard of care by proving that Winco failed "to exercise reasonable care to inform [expected users] of [the Saturn Missile's] dangerous condition or of the facts which make it likely to be dangerous." Erickson v. U-Haul Int'l, Inc., 738 N.W.2d 453, 460 (Neb. 2007); see also NJI2d Civ. § 11.11. Unlike the more concrete FHSA standard of care, the Nebraska common-law standard does not establish the form in which the warning must be communicated to the user, and it also does not limit the warning requirement to "principal hazards." Instead, Nebraska law vests the jury with the task of determining the dangers that require a warning and the form that the warning must take. Accordingly, the FHSA standard of care is not necessarily equal to or greater than the standard of care that Nebraska law imposes upon the distributor of the Saturn Missile that injured Mrs. Sherman. Theoretically, under Nebraska law, the Shermans could prove that Winco failed to comply with a standard of care different than the FHSA standard that the jury may have concluded Winco did not breach. For these reasons, we conclude that as a result of the district court's error in granting Winco's motion to amend, the Shermans' state-law failure-to-warn claim was prejudicially limited.

The Shermans contend that this error requires a new trial on all of their claims. But the record unambiguously indicates that the Winco's affirmative preemption defense affected only the Shermans' negligent-failure-to-warn claim. The district court's summary judgment order explicitly rejected Winco's contention that claims other than the failure-to-warn claim were preempted. Likewise, in its attorney's fees order, the district court recognized that "ultimately, the [Shermans'] first, second, and fourth through ninth causes of action were unaffected by [Winco's] untimely filing." (WA at 75.) There is no indication in the record, and the Shermans make no showing,

that the legal elements of any claim other than the failure-to-warn claim were affected, and there is no indication that Dr. Wood's expert testimony was relevant to any claim other than the failure-to-warn claim, and by extension Mr. Sherman's pendent consortium claim. Accordingly, the prejudicial effect of the district court's error was limited to the failure-to-warn claim and the consortium claim. A remand for a new trial on all of the Shermans' claims is unwarranted.

## III.

The Shermans also argue that the district court committed reversible error by excluding the expert testimony of Dr. Wood. Because we conclude in part II that a new trial is required on the Shermans' state-law failure-to-warn claim, and because Dr. Wood's testimony was relevant only to that claim, we do not reach this evidentiary issue. It is for the district court now to determine, in the first instance, whether Dr. Wood's expert testimony is properly admissible under the Nebraska common-law theory under which the case will proceed on remand.

## IV.

Next, we consider the Shermans' challenge to the district court's jury instructions. We review the district court's refusal to submit proffered jury instructions and its decision to give certain instructions for an abuse of discretion. The Shaw Group, Inc. v. Marcum, 516 F.3d 1061, 1068 (8th Cir. 2008); Bennett v. Hidden Valley Golf & Ski, Inc., 318 F.3d 868, 873 (8th Cir. 2003). "A federal district court presiding over a diversity case is not bound to give the jury instruction requested by the litigants, nor is the court constrained to follow the language contained in a state's uniform instructions." Fin. Holding Corp. v. Garnac Grain Co., 965 F.2d 591, 594 (8th Cir. 1992). In conducting our review, "we must determine simply whether the instructions, taken as a whole and viewed in light of the evidence and applicable

law, fairly and adequately submitted the issues in the case to the jury." The Shaw Group, Inc., 516 F.3d at 1068 (internal marks omitted). Reversal is only warranted if a party's substantial rights are prejudiced by instructional error. Burry v. Eustis Plumbing & Heating, Inc., 243 F.3d 432, 434 (8th Cir. 2001) ("We will order a new trial only if the error misled the jury or had a probable effect on its verdict." (internal marks omitted)).

A. The Effect of the Jury's Allocation of Negligence

First, the Shermans argue that the district court abused its discretion by declining to give an instruction on the effect of the jury's allocation of negligence among Winco and nonparties whom Winco argued were responsible for Mrs. Sherman's injuries.

In Instruction No. 20, the district court instructed the jury that if it found that Winco proximately caused some of Mrs. Sherman's injury, it was "required to consider and assign the respective shares of fault, if any, of the Winco Defendants against the persons or entities with whom the [Shermans] have settled." (SA at 48.) Consistent with this instruction, section B of the final verdict form directed the jury–if it reached that section–to assign negligence on a percentage basis. According to the Shermans, the district court's instructions are deficient because the jury was not instructed on the effect of its allocation of negligence between Winco and the nonparties.

The Shermans rely on two Nebraska statutes, the first of which–Neb. Rev. Stat. § 25-21,185.09–provides:

> Any contributory negligence chargeable to the claimant shall diminish proportionately the amount awarded as damages for an injury attributable to the claimant's contributory negligence but shall not bar

-14-

recovery, except that if the contributory negligence of the claimant is equal to or greater than the total negligence of all persons against whom recovery is sought, the claimant shall be totally barred from recovery. The jury shall be instructed on the effects of the allocation of negligence.

The second statute that the Shermans rely on is Neb. Rev. Stat. § 25-21,185.11(2), which states:

A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable shall preclude that person from being made a party or, if an action is pending, shall be a basis for that person's dismissal, but the person's negligence, if any, shall be considered in accordance with section 25-21,185.09.

According to the Shermans, Neb. Rev. Stat. § 21-25,185.11(2)'s instruction that a settling party's negligence "be considered in accordance with section 25-21,185.09" requires that the district court instruct the jury on the effect of its allocation of negligence among the defendant and the nonparties, even when contributory negligence is not at issue.

The Shermans' legal position is inconsistent with our reading of Nebraska law. Crucially, the Shermans ignore Neb. Rev. Stat. § 25-21,185.07, which restricts the applicability of the two Nebraska statutes on which they depend: "Sections 25-21,185.07 to 25-21,185.12 shall apply to all civil actions to which *contributory negligence* may be, pursuant to law, a defense . . . ." (Emphasis added.) By expressly narrowing the application of these statutes to cases in which contributory negligence is at issue, § 25-21,185.07 impliedly excludes the statutes' application outside of that context. See Chapin v. Neuhoff Broad.-Grand Island, Inc., 684 N.W.2d 588, 593 (Neb. 2004) (recognizing and applying the *expressio unius est exclusio alterius* canon of statutory construction). Consistent with this statute, Nebraska cases construing § 25-21,185.07 through § 25-21,185.12 limit these statutes to the contributory-

-15-

negligence context. See, e.g, Tadros v. City of Omaha, 735 N.W.2d 377, 380 (Neb. 2007) ("[F]or cases involving multiple defendants where contributory negligence is a defense, the Legislature has altered the common law." (citing §§ 25-21,185.07 to 25-21,185.12)). Although the Nebraska cases that the Shermans rely on have held that it is prejudicial error for the district court not to instruct the jury on the effects of its allocation of negligence in accordance with § 25-21,185.09, they have done so where the plaintiff's own contributory negligence was a defense at issue. See Russell v. Stricker, 635 N.W.2d 734, 737, 740 (Neb. 2001); Wheeler v. Bagley, 575 N.W.2d 616, 620 (Neb. 1998).

Early in this litigation, in Winco's answer, Winco alleged that Margaret Sherman was contributorily negligent. But by the time of trial, that affirmative defense was apparently abandoned. The district court did not give a contributory-negligence instruction to the jury, and in its brief, Winco concedes that contributory negligence was not at issue at trial. Because contributory negligence was not at issue at trial, and because the Shermans cite no persuasive Nebraska authority applying Neb. Rev. Stat. §§ 25-21,185.09 and 25-21,185.11(2) outside of the contributory-negligence context, we conclude that the district court committed no prejudicial error by denying the requested instruction.

B. The Effect of a Violation of a Statute or Regulation

The Shermans also contend that the district court committed reversible error by failing to instruct the jury on the effect of a violation of a statute or regulation. The Shermans argue that the district court should have instructed the jury that the violation of a statute or regulation is merely evidence of negligence and does not constitute negligence per se. According to the Shermans, because the jury was not given this instruction, it may have found for Winco because it erroneously concluded that Stanley and Nate Kapustka were automatically negligent by virtue of their

-16-

violation of a regulation issued by the Nebraska Fire Marshal's Office and should therefore "bear the entire brunt of fault under the law." (Shermans' Br. at 46.) In response, Winco contends that the Shermans failed to preserve this issue and therefore our review is for plain error.

Even under the more lenient harmless-error standard, we find insufficient prejudice to justify reversal for the district court's failure to give the instruction. While it may have been appropriate for the district court to give such an instruction, there is no basis in the record to conclude that the lack of such an instruction had a "probable effect on [the jury's] verdict." Burry, 243 F.3d at 434. We will not order a new trial here, after the jury has passed on the evidence, merely because there is a metaphysical possibility that the jury's verdict was affected by the district court's failure to give the instruction.

Winco presented many theories under which the jury may have found that Winco was not liable. Among other arguments, Winco argued that it had not sold the Saturn Missile; that there was no evidence that the Saturn Missile was prone to an erratic flight path; that the warning label was legally sufficient; and that Winco–just one of several companies in the chain of distribution–was not the proximate cause of Mrs. Sherman's injuries. Winco did introduce the Nebraska fireworks regulation into the record when examining Stanley Kapustka; and during its closing argument, Winco argued that if Stanley Kapustka had not brought the illegal firework into Nebraska, Mrs. Sherman would not have been injured. But beyond these two isolated references to the regulation, the Shermans cite to no other time during the five-day trial in which the illegality of the presence of the Saturn Missile in Nebraska was brought to the jury's attention. Moreover, Winco did not argue to the jury that the Kapustkas' illegal conduct was per se negligence, legally barring the Shermans' claims. For these

reasons, we conclude that the district court did not commit reversible error by failing to give the instruction on the effect of a violation of a statute or regulation.[3]

C. Instruction Requiring the Jury to Find that Mrs. Sherman was Among Those Reasonably Expected to be Endangered by the Saturn Missile

The Shermans also contend that the district court erred by instructing the jury that it was required to find that Mrs. Sherman was "among the group of people that the Winco Defendants should reasonably have expected would be endangered by the probable use of the Saturn Missile." (SA at 31, 33.) According to the Shermans, the district court ought to have concluded as a matter of law that Mrs. Sherman was among those expected to be endangered by the firework.

We recognize that the drafting committee's comments to the Nebraska Model Jury instructions indicate that "in almost all cases this issue will be resolved as a question of law," see NJI2d Civ. § 11.10, comments & authorities, but Nebraska law also indicates that the determination of whether a legal duty exists "is a question of law dependent on the facts in a particular case." Erickson, 738 N.W.2d at 459. In Erickson, for example, the Nebraska Supreme Court characterized the question of whether the plaintiff was a person whom the product's supplier should have expected to be endangered by using the product as an issue of material fact. Id. at 462-63. Here, we conclude that even if the district court improperly submitted the question to the jury, on this record, the Shermans cannot meet the standard required to justify

_____

[3] To demonstrate prejudice, the Shermans rely on an affidavit from the jury foreperson. In ruling on the Shermans' post-verdict motions, however, the district court concluded that the affidavit is not competent evidence under Fed. R. Evid. 606(b). That determination is not challenged on appeal, and accordingly, we do not consider the affidavit further.

-18-

reversal. Slidell, Inc. v. Millennium Inorganic Chems., Inc., 460 F.3d 1047, 1054 (8th Cir. 2006) ("[A] new trial is necessary only when the errors [in the district court's instructions] misled the jury or had a probable effect on the jury's verdict."). The instruction submitted by the district court did not misstate the law or mislead the jury in any way. And there is no indication in this record that the submission of the instruction prejudicially influenced the jury's verdict. As discussed above, there were many theories under which the jury may have concluded that Winco was not liable for Mrs. Sherman's injuries. The Shermans' assignment of prejudice is speculative. Moreover, if the evidence at trial so clearly showed that Mrs. Sherman was among the group of people reasonably expected to be endangered by the firework, as the Shermans claim, then the district court's submission of this question to the jury was hardly prejudicial because the jury would have reached the same conclusion. Because we find no prejudice on this record, we conclude that the district court committed no reversible error by permitting the jury to determine whether Mrs. Sherman was among the group of people that Winco should have reasonably expected to be endangered by the probable use of the Saturn Missile.

V.

Finally, we address Winco's cross-appeal of the district court's attorney's fees award, which totaled $32,019.87. Winco argues that if we conclude that the district court abused its discretion by allowing Winco's belated preemption amendment, and reverse and remand for a new trial, then the attorney's fees award should be reversed and vacated in its entirety. The Shermans do not agree that the full award should be vacated, but concede that "[i]f this Court orders a new trial and allows Dr. Wood to testify at the new trial . . . Winco should not be required to pay $15,426.37 related to Dr. Wood's fees." (Shermans' Reply Br. at 24.)

-19-

Part of the attorney's fees award–$15,426.37 worth–accounted for costs incurred by the Shermans in preparing Dr. Wood's expert testimony. Those costs were incurred unnecessarily, and that testimony became irrelevant, as a result of Winco's belated preemption amendment. But because we reverse and remand for a new trial on the state-law failure-to-warn claim, it is no longer true that those costs were unnecessarily incurred as a result of Winco's counsel's conduct. As a result of our decision, on remand, the Shermans will again be allowed to offer Dr. Wood's expert testimony in support of their state-law failure-to-warn claim, effectively returning the Shermans to the *status quo ante*. Because we concluded in part II that the district court abused its discretion in allowing the preemption amendment, and because $15,426.37 worth of the fee award was based on costs associated with Dr. Wood's improperly excluded expert testimony, the admissibility of which will be considered anew on remand, we reverse and vacate $15,426.37 of the fee award.

Winco also urges us to reverse and vacate the remaining portion of the award, amounting to $16,593.50. But Winco makes no claim that the district court improperly awarded the Shermans attorney's fees in the first instance, effectively conceding that its conduct and the fee award meet the standard set out at § 1927. Instead, Winco's position on appeal is that a reversal of the district court's decision allowing the amendment requires a reversal of the related fee award.

The district court based its award of attorney's fees on § 1927, which authorizes a district court to require an attorney to reimburse the excess costs and attorney's fees reasonably incurred by the opposing party as a result of an attorney's "unreasonable[]" and "vexatious[]" "multipli[cation] of the proceedings." That statutory authority for the award of attorney's fees focuses on the conduct of the movant's opposing counsel. Here, Winco's counsel has not multiplied the proceedings to any lesser degree and its conduct is no less "unreasonabl[e]" and "vexatious[]" just because we conclude in part II that the district court improperly permitted Winco to amend its answer. Winco's

-20-

untimely pleading of the preemption defense after the scheduling deadline, without good cause to do so, still caused the Shermans to incur fees unnecessarily. Our resolution of the amendment issue above does not undermine the district court's statutory rationale for the remaining $16,593.50 portion of the fee award in any way; rather, it reinforces the validity of the award. Accordingly, we affirm the award in the amount of $16,593.50.

The judgment of the district court is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

_____