**Branimir CATIPOVIC, Plaintiff,**

v.

**Mark TURLEY, Ronald Fagen, and Fagen, Inc., Defendants.**

**No. C11–3074–MWB.**

United States District Court,
N.D. Iowa,
Central Division.

Nov. 20, 2013.

**304**

Kevin J. Visser, Paul D. Gamez, Simmons Perrine Moyer Bergman PLC, Cedar Rapids, IA, for Plaintiff.

Elizabeth R. Meyer, William E. Hanigan, Michael C. Richards, Sharon K. Malheiro, Davis, Brown, Koehn, Shors & Roberts, PC, Des Moines, IA, Constance M. Alt, Dana L. Oxley, Shuttleworth & Ingersoll, Cedar Rapids, IA, for Defendants.

## ORDER

LEONARD T. STRAND, United States Magistrate Judge.

### TABLE OF CONTENTS

I. INTRODUCTION ................................................................304

II. PROCEDURAL HISTORY ............................................304

III. THE PRIOR RULING ..................................................305

IV. THE RENEWED MOTION ..........................................306

V. ANALYSIS ....................................................................306

    I. Applicable Law ....................................................306

    II. Does Good Cause Exist For The Untimely Amendment? ..............307

    III. Would The Amendment Be Allowable Under Rule 15(a)? ............309
        A. Futility ..........................................................309
        B. Undue Prejudice ............................................311

VI. CONCLUSION ............................................................312

### I. INTRODUCTION

This case is before me on a renewed motion (Doc. No. 86) by plaintiff Branimir Catipovic (Catipovic) for leave to amend his complaint. Defendants Mark Turley (Turley), Ronald[1] Fagen (Fagen) and Fagen, Inc., have filed resistances (Doc. Nos. 91, 93) and Catipovic has filed a reply (Doc. No. 96). No party has requested oral argument and, in any event, I find that oral argument is not necessary. N.D. Ia. L.R. 7(c). The motion is fully submitted.

### II. PROCEDURAL HISTORY

Judge Scoles summarized the procedural history of this case as follows in a prior order:

On December 29, 2011, Plaintiff Branimir Catipovic filed his initial complaint seeking damages from Defendants Mark

---

1. Mr. Fagen's first name is stated interchangeably throughout the filings in this case as either "Roland" or "Ronald." I was going to rely on his own counsels' statement of his name until discovering that they, too, utilize both versions. *Compare, e.g.,* Pages 1 and 2 of Doc. No. 93. The original complaint named "Ronald Fagen" as a defendant. Doc. No. 1. As such, Mr. Fagen is still referenced as "Ronald" on the Clerk's electronic docket. While I suspect that Mr. Fagen's name is actually "Roland," I am sticking with "Ronald" for now based on the official title of this case. After nearly two years of litigation, the attorneys in this case should do Mr. Fagen the courtesy of determining, and using, his correct name.

Turley, Ronald Fagen, and Fagen, Inc. According to the complaint, Catipovic is a medical doctor, a citizen of Croatia, and resides in Brookline, Massachusetts. Turley is a citizen of Ireland and, according to the complaint, a resident of Dublin, Ireland. Fagen is a United States citizen residing in Minnesota. Fagen, Inc. is a Minnesota corporation headquartered in Granite Falls, Minnesota.

Catipovic became interested in ethanol production while working as a medical doctor at the VA Hospital in Mason City, Iowa. The complaint asserts that Catipovic and Defendants reached an agreement to build ethanol plants in Eastern Europe, beginning with a plant in Croatia. The Croatian ethanol plant was not developed, however, and Defendants—acting without Catipovic—ultimately built an ethanol plant in Hungary. In his initial complaint, Catipovic sought damages for breach of contract (Count I) and unjust enrichment (Count II).

On April 12, 2012, Catipovic filed an amended complaint, stating that he is a naturalized citizen of the United States. In all other respects, the amended complaint is identical to the initial complaint. Turley filed a motion to dismiss, asserting the Court lacked personal jurisdiction over him. Defendants Fagen filed a motion to dismiss, claiming improper venue and failure to state a claim. Defendants' motions were denied in a Memorandum Opinion and Order filed on June 8, 2012. *See* docket number 25. Defendants then answered the amended petition, denying the material allegations and asserting certain affirmative defenses.

Meanwhile, on May 15, 2012, the Court adopted a Scheduling Order and Discovery Plan submitted by the parties. Among other things, the parties agreed to a November 12, 2012 deadline for amending the pleadings, and a May 10, 2013 deadline for completion of discovery, with dispositive motions to be filed by June 10, 2013. In reliance on those deadlines, a jury trial was scheduled before Judge Mark W. Bennett on October 28, 2013.

On April 23, 2013—after certain discovery skirmishes—Catipovic filed an unopposed motion for extension of the scheduling order deadlines. On April 30, the Court entered an Order establishing new pretrial deadlines, including a May 29, 2013 deadline for amending the pleadings. *See* docket number 58. In addition, the trial previously scheduled for October 28, 2013 was continued to April 14, 2014.

Doc. No. 63 (the Prior Ruling) at 2–3.

### III. THE PRIOR RULING

In the Prior Ruling, Judge Scoles denied Catipovic's motion for leave to amend his complaint. That motion was filed May 29, 2013, which was the deadline for motions to amend. Catipovic requested leave to file a second amended complaint that would have added a claim of fraud against Turley as Count III. Turley resisted on grounds that the proposed amendment was futile and that allowing it would cause undue prejudice. The "futility" argument was two-pronged. Turley alleged that the proposed new fraud claim failed to meet the heightened pleading requirements imposed by Federal Rule of Civil Procedure 9(b) [2] and, in any event, that it was barred by the applicable statute of limitations.

Judge Scoles agreed with Turley that the proposed new claim failed to satisfy Rule 9(b). Specifically, he found that the proposed amendment did not adequately plead facts supporting Catipovic's allegation that Turley knew the alleged representations were false when they were made. Prior Ruling at 9–13. He wrote:

> The Court concludes that while Turley may have breached an agreement with Catipovic, nothing in Catipovic's allegations supports an inference of fraudulent intent. Catipovic's claim that "Turley knew his representations were false" at the time they were made is conclusory and based on

---

**2.** Rule 9(b) states:

**Fraud or Mistake; Conditions of Mind.** In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.

Fed.R.Civ.P. 9(b).

speculation. Catipovic has not pled any *facts* which would support a reasonable inference that Turley did not intend to perform when the promises were initially made. Accordingly, Count III of the proposed second amended complaint fails to meet the heightened pleading requirement of Rule 9(b) and would not survive a motion to dismiss. Therefore, the motion for leave to amend is futile.

*Id.* at 13 [emphasis added]. Based on this conclusion, it was not necessary for Judge Scoles to reach Turley's alternative arguments. On July 30, 2013, Judge Bennett overruled Catipovic's objections to the Prior Ruling, holding: "Judge Scoles properly concluded that the proffered amendment was 'futile' and properly denied leave to amend." Doc. No. 67 at 13.

## IV. THE RENEWED MOTION

Catipovic filed his renewed motion for leave to amend on October 17, 2013, along with another proposed second amended complaint (Proposed Amendment). Doc. Nos. 86 and 86-2. In his motion, Catipovic states that Turley was deposed on September 4, 2013, and "made several admissions that evidence his fraudulent intent with respect to the representations he made to Catipovic." Doc. No. 86 ¶ 2. While acknowledging that he filed his renewed motion well beyond the scheduling order's deadline for such motions, Catipovic states that he has been diligent in pursuing discovery and that the facts supporting the Proposed Amendment could not have been discovered earlier.

In his resistance, Turley argues that Catipovic has not shown good cause to file an untimely motion for leave to amend. He also contends that the proposed new fraud claim remains futile, as Catipovic has again failed to plead fraud with the level of specificity required by Rule 9(b). Finally, he alleges that the proposed amendment would cause undue prejudice, as discovery has closed, the proposed new claim would require substantial additional discovery and dispositive motions are due on November 22, 2013. Turley also notes that adding a fraud claim would extend the length of trial significantly, possibly impacting the court's docket.[3]

## V. ANALYSIS

### I. Applicable Law

■ Leave to amend a pleading "shall be freely given when justice so requires." Fed. R.Civ.P. 15(a). There is, however, no absolute right to amend a pleading. *See, e.g., Hammer v. Osage Beach,* 318 F.3d 832, 844 (8th Cir.2003); *Becker v. Univ. of Nebraska,* 191 F.3d 904, 908 (8th Cir.1999); *Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 224 (8th Cir.1994). Indeed, balanced against the liberal amendment policy of Rule 15(a) is the court's interest in enforcing its scheduling orders. Here, the initial deadline for amendments to pleadings was November 12, 2012, but was later extended to May 29, 2013.[4] Doc. Nos. 21, 57, 58. No further extensions were sought or ordered.

■ Scheduling orders may be modified only for "good cause." Fed.R.Civ.P. 16(b)(4); *see also* Local Rule 16(f) ("The deadlines established by the Rule 16(b) and 26(f) scheduling order and discovery plan will be extended only upon written motion and a showing of good cause."). "The interplay between Rule 15(a) and Rule 16(b) is settled in this circuit." *Sherman v. Winco Fireworks, Inc.,* 532 F.3d 709, 716 (8th Cir.2008). The liberal amendment standard contained in Rule 15(a) applies when a motion for leave to amend is filed within the time permitted by the court's scheduling order and discovery plan. *Id.* Because Catipovic's first motion for leave to file the second amended complaint was filed within the deadline for amended pleadings, Judge Scoles applied the

---

3. A separate resistance filed by Fagen, and Fagen, Inc., incorporates most of Turley's resistance but notes that the proposed new fraud claim is not directed against them. Doc. No. 93.

4. The extension occurred in response to Catipovic's April 23, 2013, motion to extend certain deadlines. In that motion, Catipovic did not state that it would be necessary to extend the then-expired deadline for amending pleadings. Doc. No. 57. However, Judge Bennett later approved the parties' jointly-proposed amended scheduling order that included a new deadline for amendments. Doc. No. 58.

Rule 15(a) standard in considering that motion. *See* Prior Ruling at 3–4.

On the other hand, "[i]f a party files for leave to amend outside of the court's scheduling order, the party must show cause to modify the schedule." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir.2008); *see also In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437–38 (8th Cir.1999) ("If we considered only Rule 15(a) without regard to Rule 16(b), we would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure.") (quoting *Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir.1998)). Catipovic's renewed motion for leave to file the second amended complaint was filed more than four months after the deadline for such motions. As such, before I consider whether the proposed amendment is proper under Rule 15(a), I must determine if Catipovic has established good cause under Rule 16(b) for filing an untimely motion to amend.

█ If Catipovic does not establish good cause, his motion must be denied. If he does, then the analysis shifts back to Rule 15(a). Even under that rule's liberal standard for amendments, a motion to amend may be denied on grounds of "undue delay, bad faith or dilatory motive on the part of the movant, ... undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *See Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir.1998).

## II. Does Good Cause Exist For The Untimely Amendment?

The Eighth Circuit Court of Appeals has explained the Rule 16(b) "good cause" standard as follows:

> "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir.2006); *see also* Fed.R.Civ.P. 16(b), advisory committee note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). While the prejudice to

the nonmovant resulting from modification of the scheduling order may also be a relevant factor, generally, we will not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines. *See Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir.2001) (concluding that there was "no need to explore beyond the first criterion, [diligence,] because the record clearly demonstrate[d] that Bradford made only minimal efforts to satisfy the [scheduling order's] requirements"). Our cases reviewing Rule 16(b) rulings focus in the first instance (and usually solely) on the diligence of the party who sought modification of the order. *See, e.g., Rahn*, 464 F.3d at 822 (affirming the district court's denial of Rahn's request for a modification of the scheduling order because the record made clear that Rahn did not act diligently to meet the order's deadlines); *Barstad v. Murray County*, 420 F.3d 880, 883 (8th Cir.2005) (affirming the district court's denial of leave to amend the Barstads' complaint under Rule 16(b) because the Barstads had eight months to request an amendment of the scheduling order and "knew of the claims they sought to add when they filed the original complaint"); *Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir.2003) (affirming, under Rule 16(b), the district court's denial of Freeman's motion to amend her complaint because she provided no reasons why the amendment could not have been made earlier or why her motion to amend was filed so late).

*Sherman*, 532 F.3d at 716–17. Under this "good cause" standard, the court held that leave to add a new defense should have been denied, as such leave was not sought until almost eighteen months after the deadline to amend pleadings had expired. *Id.* at 717–18.

█ This court, applying *Sherman*, has held that good cause for an untimely amendment under Rule 16(b) "requires a showing that, despite the diligence of the movant, the belated amendment could not reasonably have been offered sooner." *Transamerica Life Ins. Co. v. Lincoln Nat'l Life Ins. Co.*, 590 F.Supp.2d 1093, 1100 (N.D.Iowa 2008); *accord Vails v. United Comm. Health Ctr.*,

*Inc.*, 283 F.R.D. 512, 514 (N.D.Iowa 2012). Catipovic argues that despite diligence on his part, he was not able to depose Turley until after the May 29, 2013, deadline for amendments. He contends Turley's deposition revealed information supporting the proposed new fraud claim that Catipovic could not have gathered until that deposition. In support of these arguments, Catipovic (a) references the objections (Doc. No. 64) he filed on July 16, 2013, with regard to Judge Scoles's Prior Ruling and (b) incorporates another portion of his brief containing quotations from Turley's deposition testimony. Doc. No. 86-1 at 3.

Catipovic's reliance on his prior objections is somewhat puzzling. Judge Bennett overruled those objections and, in the process, made findings that do not exactly advance Catipovic's current cause:

> As a final "Hail, Mary," Catipovic contends that more specific information about Turley's fraudulent acts is known to Turley, but not necessarily to Catipovic at this time, because discovery is ongoing and Catipovic has not yet deposed the defendants. Catipovic contends that additional facts supporting Turley's intent not to perform at the time that Turley made the pertinent promises may only be discovered from Turley and the other defendants, so that it is inequitable to deny his Motion For Leave To Amend based on lack of specificity in his allegations.

\*     \*     \*

Catipovic has had more than a year-and-a-half to conduct discovery, which could reasonably have included the depositions of the defendants that he admits that he has not yet conducted, as well as earlier discovery of information from Mr. Wendland. Furthermore, if Catipovic believed that additional discovery would be helpful to meet the "particularity" requirements for pleading a fraud claim or would otherwise confirm the factual basis for such a claim, after he purportedly only recently learned

facts about Turley's overtures to Mr. Wendland in late-February 2008 to go forward with the project without Catipovic, he could have moved for an extension of the deadline to amend to match the discovery deadline.

Doc. No. 67 at 11–12. In short, Judge Bennett rejected Catipovic's claim that he could not reasonably have obtained evidence supporting his proposed fraud claim prior to the deadline for amendments to pleadings.

Catipovic also refers to specific portions of Turley's deposition testimony in an attempt to show that there are new facts that he could not have discovered earlier, despite diligence. Assuming it is true that Turley's testimony revealed relevant new evidence concerning the proposed fraud claim, it is the "despite diligence" part that again trips Catipovic up. In addition to Judge Bennett's prior findings:

a. Turley, a resident of Hungary, offered to be deposed in Hungary "several months" prior to March 28, 2013, and restated the offer on both March 28 and April 3. *See* Doc. No. 41–4 at 6, 8, 12.

b. In a motion filed April 5, 2013, Turley stated that he would be willing to be deposed via videoconference. Doc. No. 41 at 4.

c. On April 19, 2013, Judge Scoles entered an order adopting Turley's position that his deposition should occur by videoconference. Doc. No. 56 at 18–19.

d. Instead of quickly arranging the deposition by videoconference, Catipovic's counsel elected to travel to Hungary to depose Turley and other witnesses. Those depositions did not occur until September 2013. Doc. No. 92.

By the time Catipovic finally deposed Turley, this case had been on file for over twenty months and the deadline for amendments to pleadings had long expired. It appears that the case had been pending for over one year before Catipovic commenced any efforts to schedule Turley's deposition.[5] He then de-

---

5. In his reply, Catipovic blames his delay in deposing Turley on "Turley's deliberately slow-footed conduct" concerning written discovery. Doc. No. 96 at 2. While it is clear that there were disputes and delays involving written discovery,

Catipovic has stated in other filings that he did not begin the process of attempting to schedule Turley's deposition until February 2013, more than thirteen months after this case was filed. Doc. No. 77 at 2. Given the issues that are sure

voted substantial time to fighting about the location of the deposition before finally deciding to travel to Hungary to depose not only Turley, but five nonparty witnesses as well. Doc. No. 92. Given the number of nonparties in Hungary who apparently possess relevant information, it is difficult to understand why Catipovic sought to avoid taking a trip to that country for depositions. In any event, it is very clear that Catipovic had ample opportunity to depose Turley (either by videoconference or otherwise) before the May 29, 2013, deadline for amendments to pleadings. As such, even if Turley's deposition in September 2013 resulted in the discovery of new information, Catipovic cannot establish "that, despite the diligence of the movant, the belated amendment could not reasonably have been offered sooner." *Transamerica Life Ins. Co.,* 590 F.Supp.2d at 1100. Catipovic has not established good cause for an untimely amendment, as required by Rule 16(b). His motion must be denied on that basis.

### III. Would The Amendment Be Allowable Under Rule 15(a)?

While I have already determined that good cause does not exist to allow Catipovic's proposed, untimely amendment, I will also address the parties' arguments pursuant to Rule 15(a). Turley argues that the proposed amendment is futile and, in any event, should be denied on grounds of undue prejudice. Catipovic disagrees.

#### A. Futility

■ A proposed amendment is futile if it could not survive a Rule 12 motion to dismiss. *See In re Senior Cottages of Am., LLC,* 482 F.3d 997, 1001 (8th Cir.2007); *Van Stelton v. Van Stelton,* 904 F.Supp.2d 965, 969 (N.D.Iowa 2012); *Quality Refrigerated Services, Inc. v. City of Spencer,* 908 F.Supp. 1471, 1489 (N.D.Iowa 1995). In the Prior Ruling, Judge Scoles found that the then-proposed fraud claim would not survive a motion to dismiss because it did not meet

Rule 9(b)'s heightened pleading requirements in alleging that Turley had no intention of performing promises at the time he made them. Prior Ruling at 12–13. Catipovic argues that the new version of the proposed second amended complaint cures this deficiency by pleading additional, specific facts obtained during Turley's deposition.

■ In his resistance, Turley compares the current Proposed Amendment to the version Judge Scoles rejected in the Prior Ruling, with new language in **bold**:

39. Turley represented, on July 3, 2007 and on numerous occasions thereafter, **including in a November 2007 email from his employee John Patchell and** during his meeting with Catipovic in Ireland in February 2008 that he would work in partnership with Catipovic and [Walter] Wendland to build ethanol plants in Eastern Europe.

40. **Turley admitted his representations were false and that he never intended to have an agreement to work with Catipovic and Wendland on July 3, 2007 or thereafter.**

41. **Turley was present when the representations were made and/or received copies of the representations and knew at the time that his representations were false and he never intended to have an agreement to work with Catipovic and Wendland on July 3, 2007 or thereafter.**

42. After Catipovic and Wendland brought their plans and information to produce ethanol in Eastern Europe to him, Turley represented that Catipovic and Wendland would have a 20% equity stake in the production of ethanol in Eastern Europe. Turley, however, set about attempting to secure the profits from the project for himself and others **by reducing and later eliminating the equity stake offered to Catipovic and Wendland.**

43. Turley further represented that the critical information shared by Wendland

to arise when scheduling the deposition of a party who resides in another country, there is no reason the process could not have started far earlier (especially in light of the original deadlines for amending pleadings and completing dis-

covery). All of this is consistent with Judge Bennett's finding in July that Catipovic had already had ample time to schedule and complete Turley's deposition. Doc. No. 67 at 11–12.

and Catipovic would be kept confidential and used only for purposes of the partnership with Catipovic and Wendland to build the first ethanol plants in Eastern Europe.

44. After obtaining critical information from Wendland and Catipovic, including an introduction to Fagen and Fagen, Inc., Turley attempted to dilute Catipovic and Wendland's ownership interest in the project by pressing them to reduce their equity stake in the project. Ultimately, in February 2008, Turley attempted to eliminate Catipovic's interest in the project by approaching Wendland, in an attempt to move forward without Catipovic.

45. When Wendland did not agree to move forward without Catipovic, Turley eliminated Catipovic and Wendland and ultimately obtained Fagen and Fagen, Inc.'s agreement to proceed without Catipovic and Wendland.

46. Turley intended to deceive Catipovic by pretending to honor his commitments **by continuing to participate in negotiations relating to the shareholders' agreement even though he never intended to have an agreement** while simultaneously gathering sufficient information and contacts to enable him to become the first to successfully produce ethanol in Eastern Europe without Catipovic.

4[7]. Catipovic relied on Turley's false representations by openly sharing information with him about the ethanol industry, the business plan for the production of ethanol along the Danube River in Eastern Europe, and introducing him to a number of critical contacts involved in and knowledgeable about the production of ethanol in Eastern Europe.

4[8]. Catipovic was justified in relying on Turley's representations.

4[9]. When Turley circumvented him, Catipovic was forced to start the project over from scratch, as Fagen and FI ultimately

refused to continue to work with him and a number of the key persons that were previously working on the project were now working with Turley. Thus, Plaintiff lost the critical position of being the first to produce ethanol in Eastern Europe and also lost the ownership share Turley had promised him.

[50]. Turley's fraudulent misrepresentations caused damages to Catipovic including, but not limited to, lost compensation, loss of profits and other consequential damages in an amount in excess of the jurisdictional threshold of this Court.

Doc. No. 91 at 10–12.[6] The only new allegations that potentially go to the issue of whether Turley's alleged representations were false when made are contained in paragraphs 40, 41, 42 and 46. In paragraph 40, Catipovic alleges that Turley has "admitted" his representations were false and that he never intended to have an agreement with Catipovic and Wendland. Proposed Amendment ¶ 40. This is a conclusory allegation, not an allegation about specific facts. No details are provided about the alleged admission. When was it made, who heard it and— most critically—what did Turley really say? As Judge Scoles explained, conclusory allegations are not sufficient to plead scienter. Prior Ruling at 5–6 (citing *Commercial Prop. Inv., Inc. v. Quality Inns Int'l*, 61 F.3d 639, 644 (8th Cir.1995)). Alleging that an unspecified comment made on an unknown date to unknown parties was an admission of fraudulent intent is no better than making a bare allegation of such intent.[7]

▪ Paragraph 41 adds allegations (a) that Turley was present when representations were made and/or received copies of the representations and (b) that he knew at the time that the representations were false and he never intended to have an agreement to work with Catipovic and Wendland. Proposed Amendment ¶ 41. Again, however, with re-

---

6. In preparing the comparison, Turley erroneously numbered some of the paragraphs. I have corrected the errors herein. Also, I note that while Catipovic clearly disagrees with Turley's arguments concerning the significance of the changes, he does not contend Turley's comparison of the prior version to the current version is inaccurate.

7. If the alleged admission of fraudulent intent was made during Turley's deposition, it would have been rather easy to reference and quote the testimony at issue in the Proposed Amendment.

gard to the key issue of whether Turley knew the promises were false *when made,* this paragraph makes nothing but a conclusory allegation.

The prior version of paragraph 42 alleged that after making a representation Turley "set about attempting to secure the profits from the project for himself and others." Doc. No. 60–2 at ¶ 41. A few words have been added to allege he did this "by reducing and later eliminating the equity stake offered to Catipovic and Wendland." Proposed Amendment ¶ 42. This brief description about what Turley allegedly did after making a representation does not change the prior analyses by Judge Scoles and Judge Bennett. Judge Scoles noted that the prior version did not "state *what* attempts were made ... or *when* they were made." Prior Ruling at 11. While the new version adds details about "what," it does not answer the question of "when." Moreover, Judge Bennett explained:

> The proffered Second Amended Complaint nowhere alleges that Turley's actions to pursue building of ethanol plants in Eastern Europe without Catipovic occurred immediately after entering into the parties' initial agreement in 2007 or before the alleged reaffirmation of the agreement in February 2008, but only after those events. It also expressly alleges that there were changes in circumstances prior to the alleged repudiation of the agreement in February 2008, because it acknowledges that the February 2008 meeting was "to address and negotiate issues that had arisen regarding the Ethanol Europe project." Proffered Second Amended Complaint at ¶ 21. Although Catipovic alleges that the parties "successfully addressed several outstanding issues and celebrated their continued commitment to the Agreement that they had reached in June 2007," *id.,* he does not allege that all issues were resolved or that a final agreement was reached. Thus, Turley's alleged repudiation of the parties' agreement just days later gives rise to an inference only of "second thoughts" and "broken promises," not fraudulent intent, at the time of the February 2008 meeting.

Doc. No. 67 at 11. The new version of the proposed second amended complaint contains the same allegation referenced by Judge Bennett. *See* Proposed Amendment ¶ 22. As such, Judge Bennett's analysis of the significance of Turley's post-representation conduct still applies. The few words added to paragraph 42 do not cure Catipovic's pleading deficiency.

■ Finally, paragraph 46 (which was paragraph 45 in the prior version) adds a few additional words to allege that Turley continued to participate in negotiations even though he never intended to enter into an agreement with Catipovic. Proposed Amendment ¶ 46. The new language makes the conclusory assumption that Turley "never intended to have an agreement." No new facts are alleged that, if true, would support that proposition. As with paragraph 42, the few new words added to paragraph 46 do not satisfy the requirements of Rule 9(b).

Despite now having had the opportunity to depose Turley and other witnesses, Catipovic still has not alleged specific facts giving rise to a strong inference of fraudulent intent. As an alternative basis for denying the renewed motion to amend, I hold that the proposed new fraud claim is futile for the same reasons described by Judge Scoles and Judge Bennett in their prior rulings.

### B. Undue Prejudice

■ Finally, all defendants argue that allowing Catipovic to add a new claim at this stage of the case would cause undue prejudice. Among other things, they note that the discovery deadline has expired and dispositive motions are due to be filed soon. Catipovic argues, however, that *no* prejudice would result. Citing *Popp Telcom v. American Sharecom, Inc.,* 210 F.3d 928 (8th Cir. 2000), he states that no prejudice occurs when "the facts on which a previously unasserted claim is based are all known or available to all parties." Doc. No. 96 at 6. This argument significantly exaggerates the holding of *Popp Telecom.* In that case, the district court denied—for several reasons—a timely motion for leave to add two state-law statutory claims. 210 F.3d at 943–44. Those reasons did *not* include prejudice. In fact,

the Eighth Circuit Court of Appeals noted that the defendant "does not assert that it would be prejudiced by the inclusion of these two claims." *Id.* at 944. Instead, the defendant argued on appeal, as it had successfully argued below, that the claims were legally insufficient. *Id.*

The Eighth Circuit disagreed with the district court's conclusion about the merits of the proposed new claims:

> As we have stated throughout this opinion, we reject the contention that the Dissenters' action is barred by the doctrines of election of remedies, collateral estoppel, or collateral attack. Since we find these reasons unacceptable, that leaves the lower court without a viable reason for its denial [of the motion for leave to amend].

*Id.* Thus, the court reversed the district court's denial and remanded for the addition of the two statutory claims. *Id.* While the court never addressed the issue of prejudice, it did state as follows in describing the standards for considering proposed amendments under Rule 15(a):

> Generally speaking, reviewing courts have found an abuse of discretion in cases where the district court denied amendments based on facts similar to those comprising the original complaint. *See Bell v. Allstate Life Ins. Co.,* 160 F.3d 452, 454 (8th Cir. 1998) (citing *Sanders v. Clemco Indus.,* 823 F.2d 214, 216–17 (8th Cir.1987); *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 644 F.2d 690, 694 (8th Cir.1981)). The inclusion of a claim based on facts already known or available to both sides does not prejudice the non-moving party. *See Buder,* 644 F.2d at 694.

*Id.* at 943. These are the two sentences that apparently caused Catipovic to rely on *Popp Telecom.* However, the next two sentences state:

> A liberal amendment policy, however, is in no way an absolute right to amend. *See Thompson–El* [*v. Jones* ], 876 F.2d [66, 67 (8th Cir.1989) ]. Where an amendment would likely result in the burdens of additional discovery and delay to the proceedings, a court usually does not abuse its discretion in denying leave to amend. *See id.* at 68 (upholding lower court's refusal of

motion to amend out of concern for extra discovery requirements and attendant delay).

*Id.* In other words, adding a new claim based on already known or available facts does not, *by itself,* cause prejudice. However, doing so under circumstances that would require delays and further discovery certainly might.

Here, discovery has already closed. Catipovic suggests there would be no need to reopen discovery if he is allowed to add a fraud claim to this case. He goes so far as to state that if Turley believes any of the already-deposed witnesses have relevant evidence, he can simply call them as witnesses at trial. I categorically reject this argument. As evidenced by Catipovic's ongoing pleading problems, fraud is a tort claim with additional elements that are distinct from those presented by his existing, contract-based causes of action. It would be manifestly unjust to allow Catipovic to add a fraud claim, and introduce the possibility of punitive damages into this case for the first time, without reopening discovery.

Allowing the amendment and reopening discovery would, naturally, require a postponement of the deadline for dispositive motions. That, in turn, would likely require continuance of the existing trial date. I find that the consequences of adding a fraud claim at this late stage of the case would be unduly prejudicial to all defendants. This finding presents another alternative basis for denying Catipovic's renewed motion.

## VI. CONCLUSION

For the reasons set forth herein, plaintiff's renewed motion (Doc. No. 86) for leave to amend his complaint is **denied.**

**IT IS SO ORDERED.**