# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1831

_____

In re: Target Corporation Securities Litigation

------------------------------

Carpenters' Pension Fund of Illinois

*Plaintiff - Appellant*

Police Retirement System of St. Louis, Individually and on Behalf of All Others
Similarly Situated; Salvatore Rizzo, Individually and on Behalf of All Others
Similarly Situated

*Plaintiff*s

v.

Target Corporation; Gregg W. Steinhafel; John J. Mulligan; Anthony S. Fisher

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: November 12, 2019
Filed: April 10, 2020

_____

Before SHEPHERD, GRASZ, and KOBES, Circuit Judges.

_____

KOBES, Circuit Judge.

Plaintiffs are investors who purchased Target Corporation stock between March 20, 2013 and August 4, 2014. They sued Target and several of its executives, claiming that Target misled investors about problems in its Canadian stores. The district court[1] found that the investors failed to satisfy the heightened pleading standards applied to securities actions and dismissed. It also denied the investors' motion for reconsideration and for leave to amend. The investors appeal both decisions and we affirm.

I.

The first issue before us is whether the investors have pleaded fraud with enough particularity to survive a motion to dismiss. We accept the facts pleaded in the complaint as true and track the allegations in the complaint here. *Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 975 (8th Cir. 2012).

Target is one of the largest retailers in the United States, but until 2013 it had no international presence. In 2011, it announced plans to change that and created Target Canada. From March to November 2013, Target opened 124 Canadian stores and developed new supply chain and information technology infrastructure to support them. The decision to develop these new systems proved disastrous.

_____

[1] The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

Target Canada immediately ran into trouble: the new inventory forecasting software provided inaccurate demand forecasts and employees did not understand how to use it. The new inventory management system required employees to manually enter up to 50 pieces of information—including manufacturer name, model number, weight, dimensions, UPC identifying code, etc.—for each one of Target's more than 75,000 products. To complete all of this data entry in time for the opening of its first Canadian stores, Target held a "data week" in 2012 and temporarily reassigned employees to input information into the inventory management system. The effort mostly failed. According to a *Canadian Business* report, the information initially loaded into the inventory management system was accurate just 30 percent of the time.

Target's other systems compounded these problems. The warehouse management system did not communicate well with the inventory management system. The checkout system frequently malfunctioned and did not accurately convey to the other systems what items needed to be replenished. For example, if a blue dress was selling well in one of Target Canada's stores, the warehouse might mistakenly "resupply" it with a red dress that was hardly selling. This led to some shelves sitting empty and others overflowing with inventory.

Target's issues became more noticeable when the Canadian stores opened for business. In addition to the empty shelves, Target Canada's distribution centers were quickly overwhelmed with excess inventory. By fall 2013, the distribution centers were full to bursting and extra items had to be stored on trailers until the company eventually leased additional space. In January 2015, less than two years after Target's initial foray into the Canadian market, Target Canada filed for bankruptcy and Target announced plans to shutter its Canadian stores.

The investors brought this action alleging that from March 20, 2013 to August 4, 2014, Target executives misled investors by understating the seriousness of the

problems with Target Canada, overstating their ability to correct them, and making unrealistic projections about the profitability of the Canadian stores. Target moved to dismiss for failure to state a claim and the district court granted the motion because the investors had not satisfied the heightened pleading standards of the Private Securities Litigation Reform Act of 1995. The investors moved for reconsideration and sought leave to amend, but the district court denied both motions.

## II.

Section 10(b) of the Securities and Exchange Act of 1934 makes it unlawful for any person "[t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe." 15 U.S.C. § 78j(b). SEC Rule 10b-5 prohibits "mak[ing] any untrue statement of a material fact or . . . omit[ting] to state a material fact necessary in order to make the statements made . . . not misleading." 17 C.F.R. § 240.10b-5(b).

Investors have a private cause of action for violations of § 10(b) or Rule 10b-5. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37 (2011). A corporation is liable to investors who can prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Id.* at 37–38 (quoting *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008)).

The district court found the investors failed to state such a claim. We review this decision *de novo* and apply the PSLRA's heightened pleading standards. *In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 882 (8th Cir. 2009). To satisfy the PSLRA, the complaint must "specify each statement alleged to have been misleading

[and] the reason or reasons why the statement is misleading, and, if an allegation . . . is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). It must also "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* at § 78u-4(b)(2)(A). Broadly speaking, successful complaints will be drafted with particularity and allege the "who, what, when, where, and how" of the fraud. *KV Pharma*, 679 F.3d at 980 (citation omitted).

The investors allege that Target executives made dozens of materially misleading statements during the class period. These statements include descriptions of Target's supply chain and IT infrastructure in annual 10-K filings with the SEC, as well as early descriptions of Target Canada's efforts to prepare for and open its first stores. They also allege fraud based on later statements describing the response to problems with Target Canada's supply chain and IT infrastructure as they became more apparent. Finally, the investors allege that several earnings updates painted an overly optimistic picture of Target Canada's profitability. We conclude that none of these allegations satisfy the PSLRA's mental state requirement and, for one allegation, its falsity requirement.

To plead the necessary mental state, plaintiffs must set forth facts that show "reckless or intentional wrongdoing." That mental state can be established with: (1) "facts demonstrating a mental state embracing an intent to deceive, manipulate, or defraud," (2) "conduct which rises to the level of severe recklessness," or (3) "allegations of motive and opportunity." *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008). The investors do not need to find a "smoking gun," but they do need to allege facts supporting an inference of fraud that is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 324 (2007). The district court provided an exhaustive review of the allegedly fraudulent

statements presented in the investors' complaint, but a few examples suffice to show how the complaint failed to allege facts supporting an inference of fraudulent intent.

At a retail conference on March 28, 2013, Target's CFO told investors, "Going into the last year . . . [Target Canada] needed to build out of the supply chain [and] build the technology. . . . We achieved all . . . of those objectives. . . . We're right where we want to be right now." Compl. ¶ 179. The investors allege this statement was misleading "because it failed to disclose the systemic problems experienced in Target Canada's supply chain IT systems, which was known to Defendants or recklessly disregarded by them." Compl. ¶ 180. There is, however, no particularized explanation of how or when Target's executives learned this statement was false. We disregard "blanket" or "catch-all" assertions of scienter.[2] *See Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 660 (8th Cir. 2001).

The same failure plagues allegations that Target executives defrauded investors when they made statements like "Things like replenishment systems, they take a while to tune, and so we're tuning." Compl. ¶ 196. The investors argue that these statements suggest Target Canada's problems could have been fixed with "tuning" when executives actually knew more drastic action was needed. The complaint—like Target Canada's brief existence—demonstrates that "tuning" was inadequate in hindsight, but the investors do not show Target executives knew that when they made the challenged statements. The PSLRA does not allow "pleading fraud by hindsight." *In re Stratasys*, 864 F.3d at 883 (citation omitted). Nothing in the complaint makes a "compelling" case for fraud and we believe the more compelling inference, which

---

[2] In addition to insufficiently alleging the required mental state, "[w]e're right where we want to be right now," and similar statements like "we feel really good about where we are today," Compl. ¶ 196, are inactionable puffery. *In re Stratasys Ltd. S'holder Sec. Litig.*, 864 F.3d 879, 882 (8th Cir. 2017) (puffery includes "optimistic statements" that cannot be "supported by objective data or otherwise subject to verification by proof") (citation omitted).

is fatal to the investors' case, is that Target executives did not understand the magnitude of the problems they faced. The complaint suggests as much when it notes that "Target's efforts to finally implement changes to address systemic problems with its supply chain IT systems came in too little too late." Compl. ¶ 157.

The investors argue that they have pleaded the required mental state by showing Target executives were motivated to artificially inflate Target's stock price because they sold large amounts of company stock during the class period. Although we have held insider stock sales can be probative of motive, they are not inherently suspicious and "become so only when the level of trading is 'dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information.'" *In re Navarre Corp. Sec. Litig.*, 299 F.3d 735, 747 (8th Cir. 2002) (quoting *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1092 (9th Cir. 2002)). Here, the investors allege that the individual defendants sold 10-20% of their shares during the class period. We have found sales of up to 32% of an individual's stock not inherently suspicious. *In re Navarre*, 299 F.3d at 747. Furthermore, the timing in this case does not demonstrate that the sales were made when executives would "maximize the personal benefit from undisclosed information." *Id.* The bulk of the sales were made early in the class period and provide no motive for defrauding investors in the following months.

The strongest, but still insufficient, allegation is that it was materially misleading for an executive to say in May 2014, "[T]he early cycle [Canadian] stores continue to be the best. . . . So, the earliest stores, the longer they've been open, they performed the better, but the good thing is all cycles are on an upward path." Compl. ¶ 257. In August 2014, Target revealed that same-store sales had fallen more than 11% in Canada over the previous year. Because the only stores that could be included in that metric were the "earliest stores" referenced in the May 2014 statement, the investors argue that the May 2014 statement must have been false when made and Target executives must have known as much. But financial deterioration

alone is not enough to show fraud. "Plaintiffs may not proffer different financial statements and rest. Investors must point to some facts suggesting that the difference is attributable to fraud." *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 551 (8th Cir. 1997) (citation omitted). The complaint "must necessarily show that the defendants' statements were misleading." *In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079, 1083 (8th Cir. 2005).

The investors offer nothing more than the apparent incongruity of stores being on an "upward path" and sales that decreased year-over-year. The August disclosure does not show that the May 2014 statement was necessarily false, let alone that Target executives knew it was false. The year-to-year decrease in sales could just as well have looked worse in 2013 and improved by May 2014, in which case it would be true that "the longer [the stores have] been open, they performed the better." A § 10(b) claim rises and falls on an investor's ability to plead facts showing a company's statements were false or misleading when made. *KV Pharma.*, 679 F.3d at 983–84; *see also In re Cerner*, 425 F.3d at 1083–84. The investors have failed to do so here and the district court correctly granted Target's motion to dismiss.[3]

## III.

Following dismissal, the investors proposed a second amended complaint that included information from several new confidential witnesses and added details about Target executives' knowledge of and responses to Target Canada's problems. For example, the amended complaint alleged that "Target's CEO and CFO 'absolutely' had to have known about [the inventory system] problems because they affected every one of Target Canada's financials, and the culture at Target was one of internal

---

[3] For all statements other than the May 2014 statement, we focus only on the scienter element of the investors' claim. Therefore, we express no opinion as to whether the investors sufficiently alleged falsity with respect to those statements.

'transparency.'" D. Ct. Dkt. 105-2 (PSAC), ¶ 89. It also alleged Target Canada's President gave "very specific" and "problem to problem" updates about the issues Target Canada faced during the class period. PSAC ¶ 114. During biweekly executive committee meetings, several Target and Target Canada executives would "deeply delve into the [inventory] problems and potential solutions." PSAC ¶ 119. And "even though people from different organizations attempted to correct the [inventory] problems they were never fully rectified." PSAC ¶ 121. "[I]t was the type of situation where even if one issue was fixed another would spring up somewhere else." PSAC ¶ 121.

The district court denied the motion for leave to amend. It did not decide whether the proposed amended complaint satisfied the pleading standards for securities actions. Instead, it found that even if the new allegations showed that some of the statements were false when made and Target executives knew it, those statements were immaterial and did not alter the total mix of information available to investors.

We review the denial of a motion for leave to amend for an abuse of discretion. *KV Pharm.*, 679 F.3d at 987. "A court abuses its discretion when it denies a motion to amend a complaint unless there exists undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Popoalii v. Corr. Med. Servs.*, 512 F.3d 488, 497 (8th Cir. 2008). As always, we may affirm the district court on any ground supported by the record. *Reuter v. Jax Ltd., Inc.*, 711 F.3d 918, 922–23 (8th Cir. 2013).

Although the amended complaint added color and detail to the investors' allegations, it still failed to allege that Target executives knew that they were making false statements. Allegations that executives "'absolutely' had to have known" the depth of Target's problems are conclusory and perfectly consistent with the narrative

that Target had serious problems that none of its executives understood. That every time one issue was fixed, others sprang up hydra-like to replace it further supports the non-fraudulent explanation for Target's statements to investors. Because the proposed amended complaint also failed to satisfy the PSLRA, amendment was futile and we find no abuse of discretion in denying leave to amend.

## IV.

Finally, the investors appeal the dismissal of their § 20(a) claims. Section 20(a) of the Exchange Act allows "controlling person" claims to be brought in conjunction with suits under § 10(b). 15 U.S.C. § 78t(a). Such claims are "derivative and require[] an underlying violation" of the Exchange Act. *In re Hutchinson Tech., Inc. Sec. Litig.*, 536 F.3d 952, 961 (8th Cir. 2008). Because the investors' § 10(b) claim fails, dismissal of the § 20(a) claim was also appropriate. *Id.* at 962. We affirm.

_____