# United States Court of Appeals
## For the Eighth Circuit
_____

No. 20-3510
_____

City of Plantation Police Officers Pension Fund

*Plaintiff - Appellant*

v.

Meredith Corporation; Stephen M. Lacy; Thomas H. Harty; Joseph H. Ceryanec; Jonathan B. Werther

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: September 22, 2021
Filed: October 18, 2021
_____

Before SMITH, Chief Judge, GRUENDER and STRAS, Circuit Judges.
_____

GRUENDER, Circuit Judge.

The lead plaintiff in this securities-fraud class action, the City of Plantation Police Officers Pension Fund (the "Pension Fund"), appeals the district court's[1] dismissal of its amended complaint. We affirm.

_____

[1]The Honorable Charles R. Wolle, United States District Judge for the Southern District of Iowa.

## I.

In January 2018, Meredith Corp. acquired Time Inc., the owner of *TIME*, *People*, *Sports Illustrated*, and other magazines. Initially, Meredith executives were optimistic about the merger. Over time, however, it became clear that this optimism was misplaced. Meredith's stock price plunged three times in 2019, once in May after Meredith admitted that it would "take longer than originally anticipated to achieve the remainder of the synergies" from the merger, again in September after Meredith released disappointing financial results, and a third time in October after Meredith announced the departure of one of the executives leading the Time integration.

On behalf of himself and others who purchased Meredith stock between January 31, 2018 and September 5, 2019, Joseph Mroz sued Meredith and several of its executives for securities fraud. The Pension Fund was appointed lead plaintiff and filed a 125-page amended class-action complaint that added more Meredith executives as defendants. The amended complaint brought two counts: (1) securities fraud under § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and 17 C.F.R. § 240.10b-5; and (2) controlling-person liability under § 20(a) of the Securities Exchange Act, 15 U.S.C. § 78t(a). In support of these claims, the complaint identified 138 allegedly false or misleading statements made by Meredith executives about the merger during the class period.

The defendants moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. In its response, the Pension Fund argued that the complaint did state a claim but also, in a footnote, asked the district court for "leave to replead" should the district court "decide that the Complaint does not plead a claim." Although the Pension Fund did not offer a proposed amended complaint, one of the attachments to its opposition to the defendants' motion to dismiss contained a new allegation. The district court denied the Pension Fund's request for leave to amend and dismissed the complaint with

prejudice. The Pension Fund appeals, challenging the dismissal of its complaint and denial of leave to amend.

## II.

"We review *de novo* the district court's grant of a motion to dismiss a securities fraud complaint." *In re Cerner Corp. Sec. Litig.*, 425 F.3d 1079, 1083 (8th Cir. 2005). As relevant here, a defendant is liable under § 10(b) only if the plaintiff suffered economic loss as a result of relying on a material misrepresentation or omission that the defendant made with the requisite mental state. *See In re Target Corp. Sec. Litig.*, 955 F.3d 738, 742 (8th Cir. 2020). Congress has established "heightened pleading standards" for the misrepresentation and mental-state requirements of § 10(b) liability. *Cerner*, 425 F.3d at 1083 (citing the Private Securities Litigation Reform Act of 1995 § 21(d), 15 U.S.C. § 78u-4(b)). With respect to the misrepresentation requirement, the complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief," the complaint must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). With respect to the mental-state requirement, the complaint must, for "each act or omission alleged to [give rise to liability], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). A "strong inference" is one that is "at least as compelling as any opposing inference one could draw from the facts alleged." *Podraza v. Whiting*, 790 F.3d 828, 837 (8th Cir. 2015).

Not all inaccurate statements constitute material misrepresentations that can form the basis of a § 10(b) claim. Congress has provided that no forward-looking statement that is identified as such and "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement" can give rise to liability under § 10(b). 15 U.S.C. § 78u-5(c)(1)(A)(i). A statement is forward-looking if and

-3-

only if its "truth or falsity is discernible only after it is made." *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 921 (8th Cir. 2015).

In addition, a statement is immaterial for purposes of § 10(b) if "a reasonable investor could not have been swayed" by the statement. *In re K-tel Int'l, Inc. Sec. Litig.*, 300 F.3d 881, 897 (8th Cir. 2002). "[V]ague" or "optimistic rhetoric"—sometimes called corporate "puffery"—falls into this category. *In re Stratasys Ltd. S'holder Sec. Litig.*, 864 F.3d 879, 882 (8th Cir. 2017); *see also Detroit Gen. Ret. Sys. v. Medtronic, Inc.*, 621 F.3d 800, 808 (8th Cir. 2010) ("[P]uffing statements generally lack materiality because the market price of a share is not inflated by vague statements predicting growth. No reasonable investor would rely on these statements . . . ."); *K-tel*, 300 F.3d at 897 ("Immaterial statements include vague, soft, puffing statements or obvious hyperbole."). Examples of corporate puffery include forecasts of "significant growth," *Parnes v. Gateway 2000, Inc.*, 122 F.3d 539, 547 (8th Cir. 1997), claims that a company is "recession-resistant," *id.*, and boasts that a company is "leading the race," *Stratasys*, 864 F.3d at 882.

Assuming a statement does constitute a material misrepresentation, the mental state that the plaintiff must prove varies depending on the kind of misrepresentation made. Liability for a forward-looking material misrepresentation requires actual knowledge that the statement is false. 15 U.S.C. § 78u-5(c)(1)(B). For other material misrepresentations, "severe recklessness" suffices. *See K-tel*, 300 F.3d at 893. A defendant is "severe[ly] reckless[]" for purposes of § 10(b) liability only if, in "an extreme departure from the standards of ordinary care," he disregards a risk "so obvious that [he] must have been aware of it." *Id.*

Here, 137 of the 138 statements listed in the amended complaint were clearly either (1) statements identified as forward looking and accompanied by meaningful cautionary statements, (2) corporate puffery, or (3) forward-looking statements that the complaint's allegations do not imply by strong inference were made with actual knowledge of their falsity. For example, the complaint refers to statements about "hit[ting] the ground running"; "implementing . . . proven strategies, standards, and

-4-

discipline"; being "on track"; being "very pleased with the integration work so far"; and occupying an "industry-leading position"—all paradigmatic examples of the kind of "vague" and "optimistic" rhetoric that constitutes corporate puffery. *See, e.g.*, *Stratasys*, 864 F.3d at 882 (offering similar examples of corporate puffery); *City of Taylor Police & Fire Ret. Sys. v. Zebra Techs. Corp.*, 8 F.4th 592, 595 (7th Cir. 2021) (treating the statement that "integration was 'progressing as planned'" as puffery).

The remaining statement is a remark that the complaint attributes to Thomas Harty, Meredith's Chief Executive Officer at the time and one of the defendants in this action. The complaint alleges that on February 11, 2019, Harty stated that Meredith had "fully integrated [its] HR, finance, legal and IT functions." To support its claim that this was a material misrepresentation made with the requisite mental state, the complaint alleges that a former Meredith employee indicated confidentially that he had heard that legacy Meredith employees and legacy Time employees operated on different finance software systems until August 2019.

Although this statement comes closer than the other 137 to giving the Pension Fund a § 10(b) claim, it too falls short. Even assuming *arguendo* that Harty's statement was false, the confidential former employee's allegation does not "giv[e] rise to a strong inference" of severe recklessness. *See* 15 U.S.C. § 78u-4(b)(2)(A); *K-tel*, 300 F.3d at 893 (specifying the mental state required for a non-forward-looking statement like Harty's). Setting aside doubts about the significance of a confidential employee's allegations, *but see Minneapolis Firefighters' Relief Ass'n v. MEMC Elec. Materials, Inc.*, 641 F.3d 1023, 1030 (8th Cir. 2011) (disregarding the § 10(b) plaintiff's "reliance on the allegations of confidential sources" when pleading mental state), nothing in the complaint suggests that either the confidential former employee or his sources had any insight into what, if anything, Harty knew about the software that legacy Meredith and legacy Time employees in the finance department were using. Nor does the complaint "state with particularity," 15 U.S.C. § 78u-4(b)(2)(A), facts suggesting that it would have been so obvious that two software systems were in use that it was "an extreme departure from the standards

of ordinary care" for Harty to turn a blind eye to this fact, *see K-tel*, 300 F.3d at 893. The more plausible inference to draw from the allegations is that Harty made the statement because, as is typical for an executive overseeing "an ongoing corporate consolidation," he had "limited information about the inner workings of" the legacy firms' finance departments. *See Zebra*, 8 F.4th at 596. Because the inference of severe recklessness is not "at least as compelling as any opposing inference one could draw from the facts alleged," it is not the "strong inference" that § 10(b)'s heightened pleading standard requires. *See Podraza*, 790 F.3d at 837.

In sum, the complaint fails to satisfy the heightened pleading standards with respect to the misrepresentation and mental-state requirements of § 10(b) liability. Therefore, the district court properly dismissed the Pension Fund's § 10(b) securities-fraud claim. And because the Pension Fund's § 20(a) controlling-person claim is "derivative" of its § 10(b) claim, *see* 15 U.S.C. § 78t(a), the district court properly dismissed the § 20(a) claim too. *See Target*, 955 F.3d at 745 ("Because the investors' § 10(b) claim fails, dismissal of the § 20(a) claim was also appropriate.").

## III.

Ordinarily, we review the denial of leave to amend a complaint for abuse of discretion. *In re 2007 Novastar Fin. Inc., Sec. Litig.*, 579 F.3d 878, 884 (8th Cir. 2009). But "when the [district] court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss . . . , and appellate review of this legal conclusion is . . . de novo." *Cornelia I. Crowell GST Tr. v. Possis Med., Inc.*, 519 F.3d 778, 782 (8th Cir. 2008). Even then, however, the court of appeals "can affirm the [district] court's denial of leave to amend on the alternate basis that [the plaintiff] failed to offer a proposed amended complaint to the district court." *Novastar*, 579 F.3d at 884.

Here, the district court offered no meaningful explanation for its denial of the Pension Fund's request for leave to amend. The defendants urge us to affirm on the

alternative basis that the Pension Fund never offered a proposed amended complaint to the district court. In response, the Pension Fund argues that the new allegation contained in an attachment to its opposition to the defendant's motion to dismiss constituted the "substance of an amendment." Even if that were true, however, the new allegation merely supplements a former employee's statements about reports that certain Meredith executives may have seen in August 2018 and October 2018. Because this allegation does not affect the analysis above, amending the complaint to incorporate it would be futile. *See Cornelia*, 519 F.3d at 782-84. Therefore, even assuming *arguendo* that including a new allegation in an attachment to a brief in opposition to a motion to dismiss is the functional equivalent of offering a proposed amended complaint, we conclude after considering the issue of futility *de novo* that the district court properly denied leave to amend. *See id.*

## IV.

For the foregoing reasons, we affirm the district court's dismissal of the complaint and denial of leave to amend.

_____