# United States Court of Appeals

### For the Eighth Circuit

_____

No. 23-1701

_____

Mt. Hawley Insurance Company

*Plaintiff - Appellee*

v.

City of Richmond Heights, Missouri

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 10, 2024
Filed: February 12, 2024

_____

Before BENTON, ERICKSON, and KOBES, Circuit Judges.

_____

BENTON, Circuit Judge.

The City of Richmond Heights filed a claim with Mt. Hawley Insurance Company seeking coverage, under a commercial property policy, for losses of tax revenue due to government-mandated COVID-19 closures. Mt. Hawley denied the claim and sued for a declaratory judgment that it was not obligated to cover the

losses. Richmond Heights counterclaimed. The district court[1] dismissed the counterclaims, denied amendments to two of them, and granted declaratory judgment to Mt. Hawley. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

Richmond Heights, a city in St. Louis County, Missouri, purchased a commercial property insurance policy from Mt. Hawley to protect against losses of "business income"—sales-tax revenue from five retail centers. Richmond Heights has had similar policies with Mt. Hawley since 1999.

In 2020, St. Louis County ordered "all non-essential businesses" closed, causing losses of sales-tax revenue for Richmond Heights. It made a claim under the policy, which Mt. Hawley denied.

Mt. Hawley sued for a declaratory judgment that it was not obligated to cover the COVID-19 losses because the policy required "direct physical loss of or damage to property." In a five-count counterclaim, the city alleged (1) breach of contract, (2) vexatious refusal to pay, (3) fraudulent inducement and misrepresentation, (4) negligent misrepresentation, and (5) breach of fiduciary duty. Mt. Hawley moved to dismiss the counterclaims. The city sought leave to amend only counts 1 and 2. Denying the motion to amend, the district court dismissed all five counts on the pleadings, awarding declaratory judgment. Richmond Heights appeals.

## II.

In counts 1 and 2, the city asserts breach of contract and vexatious refusal to pay its COVID-19 tax losses. This Court reviews de novo a grant of Rule 12(b)(6)

---

[1]The Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri.

dismissal or a Rule 12(c) judgment on the pleadings. ***Sletten & Brettin Orthodontics, LLC v. Continental Cas. Co.***, 782 F.3d 931, 934 (8th Cir. 2015). This diversity action is governed by Missouri law.

The city's policy covers losses of "Business Income.":

**A. Coverage**
     **1. Business Income**
          Business Income means:
          **a.** Sales Tax revenue that would have been earned

          We will pay for the actual loss of Business Income you sustain due to the necessary "suspension" of "operations" during the "period of restoration". The "suspension" must be *caused by direct physical loss of or damage to property* at premises which are described in the Declarations and for which a Business Income Limit of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

(emphasis added). The policy defines "Period of Restoration":

     **2.** "Period of restoration" means the period of time that:

          **a.** Begins 72 hours after the time of direct physical loss or damage caused by or resulting from any Covered Cause of Loss at the described premises; and

          **b.** Ends on the earlier of:

               **(1)** The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

               **(2)** The date when business is resumed at a new permanent location.

The parties recognize that losses due to COVID-19 shutdowns are not "physical" losses. *See, e.g.*, *Lindenwood Female Coll. v. Zurich Am. Ins. Co.*, 61 F.4th 572, 573 (8th Cir. 2023) ("Our Court and many others have rejected this type of claim, holding COVID-19 business interruptions were due to changed conditions and circumstances that did not result from, or cause, qualifying property loss or damage."); *Monday Restaurants v. Intrepid Ins. Co.*, 32 F.4th 656, 658 (8th Cir. 2022) (applying Missouri law to a similar COVID-19 business interruption claim, this court held, "Ultimately the trigger has to be a 'physical loss,' which the businesses here fail to allege."); *Planet Sub Holdings, Inc. v. State Auto Prop. & Cas. Ins. Co., Inc.*, 36 F.4th 772, 775 (8th Cir. 2022) (applying Missouri law to hold that "'direct physical loss of or damage to property' is not triggered here. . . '[T]here must be some physicality to the loss or damage of property—*e.g.*, a physical alteration, physical contamination, or physical destruction.'"), *quoting* *Oral Surgeons P.C. v. Cincinnati Ins. Co.*, 2 F.4th 1141, 1144 (8th Cir. 2021).

Invoking the "Additional Covered Property Endorsement," the city argues that the policy is endorsed to remove the "physical damage or loss" requirement for losses of sales tax revenues. The ACPE states in full:

> This Policy is changed to include the following even though the item(s) listed may be excluded elsewhere in this policy: Sales Tax Revenue.

Under Missouri law, "the interpretation of an insurance policy is a question of law." *Mendota Ins. Co. v. Lawson*, 456 S.W.3d 898, 903 (Mo. App. 2015). Insurance contracts are read "as a whole [to] determine the intent of the parties, giving effect to that intent by enforcing the contract as written." *Thiemann v. Columbia Pub. Sch. Dist.*, 338 S.W.3d 835, 839–840 (Mo. App. 2011). "Policy terms are given the meaning which would be attached by an ordinary person of average understanding if purchasing insurance." *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 763 (8th Cir. 2020) (applying Missouri law). "The central issue in interpreting contract language is determining whether any ambiguity exists, which occurs 'where there is duplicity, indistinctness, or uncertainty in the meaning of the

-4-

words used in the contract.'" ***Id.***, *quoting* ***Peters v. Employers Mut. Cas. Co.***, 853 S.W.2d 300, 302 (Mo. banc 1993).

Richmond Heights contends that "except for the ACPE all the coverage language in the policy is ambiguous, circuitous and difficult to interpret," and that "an ordinary person would read the ACPE and give it the plain meaning of the words stated, i.e., that it 'changes' the Policy to provide insurance for lost 'Sales Tax Revenues,' and that those revenues are the insured property under the Policy."

As the district court correctly noted, "the City's proposed reading . . .would create a conflict between the ACPE and the [coverage provisions]" and "would render those very clear coverage limitations nugatory." ***Mt. Hawley Ins. Co. v. City of Richmond Heights***, 2022 WL 767069, at *6 (E.D. Mo. Mar. 14, 2022). "In constructing contractual provisions, this court is to avoid an interpretation that renders other provisions meaningless." ***Gohagan v. Cincinnati Ins. Co.***, 809 F.3d 1012, 1015 (8th Cir. 2016), *quoting* ***Nodaway Valley Bank v. E.L. Crawford Constr., Inc.***, 126 S.W.3d 820, 827 (Mo. App. 2004).

Richmond Heights contends that if the ACPE conflicts with general provisions, it should prevail. *See* ***Warden v. Shelter Mut. Ins. Co.***, 480 S.W.3d 403, 410 (Mo. App. 2016) ("If the language of the endorsement and the general provisions of the policy *conflict*, the endorsement will prevail, and the policy remains in effect as altered by the endorsement.") (quotation omitted) (emphasis added). "The policy of insurance and an endorsement must be read together where there is a dispute as to its meaning, and they should be construed together unless they are in such conflict they cannot be reconciled." ***Abco Tank & Mfg. Co. v. Fed. Ins. Co.***, 550 S.W.2d 193, 198 (Mo. banc 1977).

Here, the ACPE and the physical damage or loss restrictions do not conflict. As the district court properly noted, "[as] vindicated by the plain text, the ACPE merely makes the Policy's exclusions inoperative if they might apply to sales tax revenues otherwise meeting the requirements imposed by the coverage provisions."

*Mt. Hawley Ins. Co.*, WL 767069, at *6. This interpretation does not conflict with the rest of the policy, unlike the City's interpretation, which would render meaningless the explicit physical loss or damage limitation. Interpreting the ACPE to eliminate the "physical loss or damage" requirement is not reasonable.

The district court did not err in dismissing counts 1 and 2, the city's breach of contract and vexatious refusal claims.[2]

III.

The city also argues that the district court improperly dismissed count 3 (fraud in the inducement and fraudulent misrepresentation), count 4 (negligent misrepresentation), and count 5 (breach of fiduciary duty).

In counts 3 and 4, the city alleges that Mt. Hawley, at the initial issuance and at each renewal, stated that the policy covered losses of sales-tax revenue, regardless of the cause of the loss, and that this statement was proven false by Mt. Hawley's denial of the claim. The district court dismissed counts 3 and 4 as "not independent from the City's breach of contract claim."

"[A]n insurance company's denial of coverage itself is actionable only as a breach of contract and, where appropriate, a claim for vexatious refusal to pay." *Overcast v. Billings Mut. Ins. Co.*, 11 S.W.3d 62, 69 (Mo. banc 2000) (denying fraud and negligent misrepresentation claims where the insured's claims were "based on [the insurer's] refusal to pay"). *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("An insured cannot recast a contract claim as a conspiracy tort under Missouri law."), *citing Meeker v. Shelter Mut. Ins. Co.*, 766 S.W.2d 733, 742–43 (Mo. App. 1989). "Appellant is foreclosed from asserting [fraud and misrepresentation] claims against [the insurer] because the facts pled in

_____

[2]Similarly, the city's arguments for liability under the policy's "Civil Authority" coverage fail, as it has the same "physical loss or damage" requirement.

those counts are already within its causes of action for breach of contract and vexatious refusal to pay." ***Ryann Spencer Grp., Inc. v. Assurance Co. of Am.***, 275 S.W.3d 284, 290 (Mo. App. 2008). *Cf.* ***Overcast,*** 11 S.W.3d at 68 (Missouri Supreme Court holding that a policyholder could bring a defamation claim against an insurer where it "is based on conduct quite distinct from conduct that merely constituted a breach of contract.").

Here, the city relies on Mt. Hawley's denial of payment—the basis of its contract claim—to prove the falsity of its representations. Richmond Heights's inducement and misrepresentation claims were not "based on conduct quite distinct from" the underlying breach of contract allegation. *Id.* The district court did not err in dismissing counts 3 and 4.

In count 5, the city alleges that Mt. Hawley owed it a fiduciary duty due to its "greater knowledge and power with respect to the insurance industry," and breached this duty by providing a policy that did not meet the city's needs. "[A]n insurer generally does not owe fiduciary duties to its insured when the insured is making a first party claim against the insurer." ***Pool v. Farm Bureau Town & Country Ins. Co. of Missouri***, 311 S.W.3d 895, 905–906 (Mo. App. 2010). "[A] fiduciary relationship is notably absent in claims by an insured against an insurer under policies of property and related types of insurance." *Id.* at 907, *quoting* ***Duncan v. Andrew County Mut. Ins. Co.***, 665 S.W.2d 13, 19 (Mo. App. 1983). "In first party claims by insureds against insurers under policies affording coverage for loss or damage to property and related types of insurance, the parties occupy a contractually adversary or creditor-debtor status as opposed to standing in a fiduciary relationship." *Id.*

Here, the city brought a first party claim against Mt. Hawley under a policy affording coverage for loss or damage to property. The district court correctly dismissed this claim, finding that a fiduciary duty did not exist under Missouri law.

IV.

The city challenges the district court's denial, on futility grounds, of leave to amend counts 1 and 2.

"Generally, we review the denial of leave to amend a complaint under an abuse of discretion standard; however, when the district court bases its denial on the futility of the proposed amendments, we review the underlying legal conclusions de novo." ***Jackson v. Riebold***, 815 F.3d 1114, 1122 (8th Cir. 2016) (quotation omitted). "A district court's denial of leave to amend a complaint may be justified if the amendment would be futile." ***Hillesheim v. Myron's Cards & Gifts, Inc.***, 897 F.3d 953, 955 (8th Cir. 2018) (quotation omitted). "An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule 12(b)(6)." ***Id.*** (quotation omitted).

In its proposed amendment, the city alleged that COVID-19 was present on the premises and constituted "physical damage." This court has cast doubt on this theory of "physical damage." *See* ***Lindenwood***, 61 F.4th at 574 ("[W]e harbor serious doubt that Lindenwood's 'viral presence' theory satisfies the physicality requirement or that the current factual allegations satisfy *Iqbal*'s plausibility standard."). Other circuits have rejected this theory. *See, e.g.*, ***Santo's Italian Cafe LLC v. Acuity Ins. Co.***, 15 F.4th 398, 402 (6th Cir. 2021) ("The novel coronavirus did not physically affect the property in the way, say, fire or water damage would. . . . A loss of use simply is not the same as a physical loss."); ***Gilreath Family & Cosm. Dentistry, Inc. v. Cincinnati Ins. Co.***, 2021 WL 3870697, at *2 (11th Cir. Aug. 31, 2021) (per curiam) ("[W]e do not see how the presence of [COVID-19] particles would cause physical damage or loss to the property. Gilreath thus has failed to state a claim that Cincinnati Insurance breached the policy's 'Business Income' or 'Extra Expense' provisions.").

Because the city's proposed amendment did not plead a physical loss or damage, the district court properly denied leave to amend counts 1 and 2.[3]

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

---

[3]Richmond Heights never filed a proposed amended counterclaim for counts 3–5. On appeal, it contends that the district court improperly foreclosed any amendment of counts 3–5. (Its proposed amendment, submitted with its motion to amend, only addressed counts 1 and 2.) "A district court does not abuse its discretion in denying leave to amend when a plaintiff has not submitted a proposed amended pleading in accord with a local procedural rule." ***United States ex rel. Raynor v. Nat'l Rural Utilities Co-op. Fin., Corp.***, 690 F.3d 951, 958 (8th Cir. 2012). *See* **Local Rule 4.07**. The district court did not improperly foreclose any amendment to counts 3–5.