# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-2905
_____

Clara Cheeks, In Her Personal Capacity

*Plaintiff - Appellant*

v.

Jon Belmar, Individually and in his Official capacity as St. Louis County, Missouri Chief of Police; St. Louis County, Missouri; M. Broniec, M.SGT, Trooper of MSHP (Individually); Paul Kempke, SGT., Trooper for MSHP (Individually); B.A. Teague, CPL., Trooper for MSHP; Individually; Mark Jakob, Individual capacity; Frank L. Maloy, as Personal Representative of the Estate of Alex Maloy

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Eastern District of Missouri

_____

Submitted: September 16, 2025
Filed: December 12, 2025

_____

Before BENTON, GRASZ, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

Mikel Neil initiated a high-speed chase by fleeing from St. Louis County police officers Alex Maloy and Mark Jakob. During the chase, one of the officers performed a PIT maneuver that caused Neil to fatally crash into a tree. Neil's mother,

Clara Cheeks, then sued under 42 U.S.C. § 1983, alleging the officers used excessive force on Neil. The district court[1] dismissed Cheeks's excessive force claim, and she now appeals. We affirm.

## I. Background

After allegedly seeing Neil run a red light in Berkeley, Missouri, Maloy and Jakob turned on their emergency lights to pull him over.[2] But Neil fled, prompting Maloy and Jakob to give chase. The pursuit reached speeds greater than ninety miles per hour on a primarily residential street with a thirty-five to forty mile-per-hour speed limit. During the chase, Maloy and Jakob's police car struck Neil's vehicle while executing a PIT maneuver, causing Neil to collide with a tree near the roadway. St. Louis County Police Department's pursuit policy prohibits chasing misdemeanor suspects, and Maloy and Jakob left the scene of the crash without rendering aid or calling for medical assistance, later falsely reporting the crash as a single-car accident.

Following Neil's death, Cheeks brought several § 1983 and state-law claims against Maloy,[3] Jakob, and others — most of which the district court dismissed. Relevant here, the district court granted Maloy and Jakob qualified immunity against Cheeks's excessive force claim, holding she had failed to allege a constitutional violation. Over thirteen months later — after the pleading-amendment deadline had passed — Cheeks moved for leave to amend, hoping to revive her excessive force claim. The district court denied that motion for futility under Federal Rule of Civil

---

[1]The Honorable Sarah E. Pitlyk, United States District Judge for the Eastern District of Missouri.

[2]Because we are reviewing the grant of a motion to dismiss for failure to state a claim, we recite the facts as alleged in the operative complaint. *See Christiansen v. Eral*, 52 F.4th 377, 378 (8th Cir. 2022).

[3]Maloy died during the pendency of this case. His father, Frank Maloy, was substituted as the proper party. *See* Fed. R. Civ. P. 25(a).

Procedure 15(a). This left Cheeks with one remaining active claim against Maloy and Jakob for failure to provide medical aid to Neil. After that claim survived summary judgment, Maloy and Jakob appealed, and we affirmed. *Cheeks v. Belmar*, 80 F.4th 872, 874 (8th Cir. 2023). But before trial, Cheeks voluntarily dismissed the claim and took this appeal instead, challenging the dismissal of her excessive force claim and the denial of her motion for leave to amend.

## II. Analysis

Cheeks first argues the district court erred by dismissing her excessive force claim based on qualified immunity. "We review de novo the grant of a motion to dismiss for failure to state a claim, accepting the well-pled allegations of the complaint as true and granting all reasonable inferences in favor of the nonmoving party." *Murphy v. Schmitt*, 143 F.4th 914, 918 (8th Cir. 2025); *see also* Fed. R. Civ. P. 12(b)(6). The complaint must contain sufficient facts for a court to reasonably infer the defendant's liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A government official is entitled to qualified immunity unless (1) the facts alleged by the plaintiff establish the violation of a constitutional right; and (2) the right was clearly established at the time of the official's alleged misconduct." *Murphy*, 143 F.4th at 918. At the pleading stage, the official "must show that he is entitled to qualified immunity on the face of the complaint." *Id.* (alteration incorporated) (quoting *Carter v. Huterson*, 831 F.3d 1104, 1107 (8th Cir. 2016)).

The Fourth Amendment prohibits "using excessive force when conducting a seizure." *Ching ex rel. Jordan v. City of Minneapolis*, 73 F.4th 617, 620 (8th Cir. 2023); *see also* U.S. Const. amend. IV. A PIT maneuver performed with the intent to restrain a fleeing suspect is a seizure. *See Scott v. Harris*, 550 U.S. 372, 381 (2007); *Torres v. Madrid*, 592 U.S. 306, 317–18 (2021); *see also, e.g.*, *Sabbe v. Wash. Cnty. Bd. of Comm'rs*, 84 F.4th 807, 820 (9th Cir. 2023). "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Davenport v. City of Little Rock*,

-3-

142 F.4th 1036, 1044 (8th Cir. 2025) (quoting *Z.J. ex rel. Jones v. Kansas City Bd. of Police Comm'rs*, 931 F.3d 672, 681 (8th Cir. 2019)). The reasonableness of deadly force turns on "the totality of the circumstances, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officer or others, and [3] whether the suspect is actively fleeing or resisting arrest." *Id.* (alterations in original) (quoting *Wallace v. City of Alexander*, 843 F.3d 763, 768 (8th Cir. 2016)); *see also Graham v. Connor*, 490 U.S. 386, 396 (1989).

Weighing these factors, the Supreme Court has already held "[a] police officer's attempt to terminate a dangerous high-speed car chase that threatens the lives of innocent bystanders does not violate the Fourth Amendment, even when it places the fleeing motorist at risk of serious injury or death." *Scott*, 550 U.S. at 386. In *Scott*, a motorist initiated a police chase, "racing down narrow, two-lane roads in the dead of night at speeds" exceeding eighty-five miles per hour. *Id.* at 375, 379. After police failed to box in the motorist, an officer waited until the road was clear and rammed the motorist's vehicle from behind, causing him to crash and rendering the motorist a quadriplegic. *Id.* at 375, 380 n.7. Even though ramming the motorist's car "posed a high likelihood of serious injury or death to" him, the Supreme Court held the officer acted reasonably given the public dangers posed by high-speed chases. *Id.* at 384.

Making clear what *Scott* implied, we have stated a lack of immediate danger to bystanders does not alone render a PIT maneuver unreasonable. *See Christiansen v. Eral*, 52 F.4th 377, 380–81 (8th Cir. 2022). In *Christiansen*, a motorist fled the police at night traveling eighty to ninety miles per hour. *Id.* at 378–79. After police unsuccessfully tried to end the pursuit using stop sticks, an officer used a PIT maneuver, causing the motorist to collide with a light pole. *Id.* While the motorist argued he was not an immediate threat to other vehicles or pedestrians when the officer used the PIT maneuver, we explained the motorist's reckless driving "had already threatened the safety of others during the chase." *Id.* at 380. As a result, a reasonable officer could have believed permitting the chase to continue would

threaten the lives of potential bystanders.  *Id.* (citing *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 580 (5th Cir. 2009)).

As *Scott* and *Christiansen* illustrate, no Fourth Amendment violation occurred here.  Neil led a pursuit through a residential area at speeds exceeding ninety miles per hour — more than double the posted speed limit.  Consequently, his reckless flight created "an actual and imminent threat to the lives of any pedestrians who might have been present, to other civilian motorists, and to the officers involved in the chase."  *Scott*, 550 U.S. at 384; *see also Graham*, 490 U.S. at 396.  Though Cheeks maintains Neil did not pose a "significant threat" to the officers or others when the driving officer[4] performed the PIT maneuver, we disagree.  Suspects fleeing from police in vehicles pose a generally inherent danger to the public, "even when no bystanders or other motorists are immediately present."  *Pasco*, 566 F.3d at 580; *accord Christiansen*, 52 F.4th at 380.  Under the circumstances here, the PIT maneuver constituted a reasonable seizure.

Cheeks raises three arguments to the contrary, all of which lack merit.  First, she asserts the PIT maneuver was unreasonable because the driving officer did not try other methods of ending the pursuit first.  To be sure, the pursuits in *Scott* and *Christiansen* involved initial attempts to trap the fleeing motorists.  *See Scott*, 550 U.S. at 375; *Christiansen*, 52 F.4th at 378.  But a reasonable officer in Maloy or Jakob's position could have believed "that, if the chase continued, [Neil] posed a

---

[4]The complaint is unclear about which officer drove the police car and executed the PIT maneuver.  Even so, we must conduct "an *individualized* analysis of *each* officer's alleged conduct."  *Bulfin v. Rainwater*, 104 F.4th 1032, 1038 (8th Cir. 2024) (quoting *Bloodworth v. Kansas City Bd. of Police Comm'rs*, 89 F.4th 614, 624 (8th Cir. 2023)).  Neil did not yield to the emergency lights, so only the officer who performed the PIT maneuver could have seized him.  *See California v. Hodari D.*, 499 U.S. 621, 628–29 (1991).  Because no liability exists for the passenger officer, we go on to analyze only the driving officer's conduct.  And since no constitutional violation occurred, the driving officer's identity does not affect our conclusion.

-5-

risk of serious harm or even death to others he encountered along the way." *Christiansen*, 52 F.4th at 380. So the driving officer was not required to wait on other officers to set traps before using a PIT maneuver to end the pursuit promptly.

Second, Cheeks argues Maloy and Jakob's violation of St. Louis County's pursuit policy demonstrates the driving officer acted unreasonably. We have "repeatedly explained that police department guidelines and policies do not create rights that give rise to a § 1983 action." *Id.* at 379. "[T]he [C]onstitution doesn't rise and fall with the whims of each police department's policies . . . ." *Id.* Thus, "[j]ust because [the driving officer] chose to violate department policy doesn't mean that he acted unreasonably from a constitutional perspective . . . ." *Id.* at 380.

Third, Cheeks's brief lists instances of Maloy and Jakob's post-crash conduct — such as leaving the scene without calling for aid — to show they knew the PIT maneuver was unjustified. But these allegations relate to Maloy and Jakob's subjective beliefs. Since reasonableness "does not turn on the subjective intent of the officer," the driving officer's subjective beliefs about his conduct have no bearing on its constitutionality. *LeMay v. Mays*, 18 F.4th 283, 287 (8th Cir. 2021) (quoting *Andrews v. City of West Branch*, 454 F.3d 914, 918 (8th Cir. 2006)).

We now turn to the denial of Cheeks's motion for leave to amend her complaint. "Generally, we review the denial of leave to amend a complaint under an abuse of discretion standard; however, when the district court bases its denial on the futility of the proposed amendments, we review the underlying legal conclusions de novo." *Mt. Hawley Ins. Co. v. City of Richmond Heights*, 92 F.4th 763, 769 (8th Cir. 2024) (quoting *Jackson v. Riebold*, 815 F.3d 1114, 1122 (8th Cir. 2016)). We also review de novo whether the district court applied the correct legal standard in exercising its discretion. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 714 (8th Cir. 2008). "A district court abuses its discretion when it applies an incorrect legal standard." *Petrone v. Werner Enters., Inc.*, 940 F.3d 425, 433–34 (8th Cir. 2019) (quoting *Union Elec. Co. v. Energy Ins. Mut. Ltd.*, 689 F.3d 968, 970 (8th Cir. 2012)).

When a party seeks leave to amend, courts should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In fact, "[a] court abuses its discretion when it denies a motion to amend the pleadings unless there exists undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Midwest Med. Sols., LLC v. Exactech U.S., Inc.*, 95 F.4th 604, 606–07 (8th Cir. 2024) (alteration incorporated) (quoting *In re Target Corp. Secs. Litig.*, 955 F.3d 738, 744–45 (8th Cir. 2020)). But after the district court has set a pleading-amendment deadline in a scheduling order, Rule 16(b) — rather than Rule 15(a) — governs the amendment of pleadings after the deadline expires. *Sherman*, 532 F.3d at 716; *see also* Fed. R. Civ. P. 16(b)(4). Thus, a party seeking leave to amend after the deadline must first show good cause for the untimely amendment under Rule 16(b). *Sherman*, 532 F.3d at 716. Only after the movant shows good cause may the court consider whether amendment is proper under Rule 15(a). *Id.*

The district court set a pleading-amendment deadline in its first case management order. It later reset certain case management dates but declined to grant additional time to amend the pleadings in its second case management order. When Cheeks sought leave to amend, roughly twenty months had passed since the original pleading-amendment deadline. The district court proceeded directly to evaluating her motion under Rule 15(a) rather than requiring her to first show good cause for the untimely amendment. While the parties have not disputed the standard applied by the district court, we "retain[] the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991). As we have noted before, "Rule 16(b)'s good-cause standard is not optional." *Sherman*, 532 F.3d at 716. Applying Rule 15(a) without first requiring good cause under Rule 16(b) would effectively read the good-cause requirement out of the Federal Rules of Civil Procedure. *Id.*

Even so, any error was harmless here. *See* Fed. R. Civ. P. 61. We agree with the district court that Cheeks's proposed amendments were futile. "An amendment is futile if the amended claim could not withstand a motion to dismiss under Rule

12(b)(6)." *Mt. Hawley Ins. Co.*, 92 F.4th at 769 (quoting *Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018)). The proposed amendments include several new, pertinent allegations: (1) the pursuit began at 9:30 p.m.; (2) the driving officer may have used a ramming maneuver rather than a PIT maneuver; and (3) the maneuver caused Neil's car to swerve into oncoming traffic before spinning out of control and into the tree. Despite marshaling these new facts, the proposed complaint still fails to state an excessive force claim.

For one, the late hour and possible ramming maneuver increase the factual similarities between this case and *Scott*, where an officer rammed a vehicle during a high-speed chase late at night. *See Scott*, 550 U.S. at 375, 379. Further, ramming maneuvers are "materially identical" to PIT maneuvers. *Christiansen*, 52 F.4th at 380. And finally, Neil's turn into oncoming traffic implies the presence of other vehicles nearby, which only increases the potential risk Neil posed to the public. These new allegations do not make the driving officer's actions less reasonable. Since the proposed amendments do not establish a Fourth Amendment violation, they are futile.

## III. Conclusion

We affirm the district court's dismissal of Cheeks's excessive force claim and its denial of leave to amend.

_____